The referee's report is conclusive as to the facts. It states, in substance, that the plaintiff had sufficient information to put him upon inquiry as to the defendant's mortgage; but that after making all the inquiry, which upon such information it became his duty to make, he failed to discover that any such mortgage existed. This being, as I think, what the referee intended to state, is to be assumed as the true interpretation of his report.
The question in the case, therefore is, as to the nature and effect of that kind of notice so frequently mentioned as notice sufficient to put a party upon inquiry. The counsel for the plaintiff contends that while such a notice may be all that is required in some cases of equitable cognizance, it is not sufficient in cases arising under the registry acts, to charge the party claiming under a recorded title with knowledge of a prior unregistered conveyance. He cites several authorities in support of this position.
In the case of Dey v. Dunham (2 John. Ch. R., 182), Chancellor KENT says, in regard to notice under the registry act: "If notice that is to put a party upon inquiry be sufficient to break in upon the policy and the express provisions of the act, then indeed the conclusion would be different; *Page 356 
but I do not apprehend that the decisions go that length." Again, in his commentaries, speaking on the same subject, he says: "Implied notice may be equally effectual with direct and positive notice; but then it must not be that notice which is barely sufficient to put a party upon inquiry."
So in Jackson v. Van Valkenburg (8 Cow., 260), WOODWORTH, J., says: "If these rules be applied to the present case, the notice was defective. It may have answered to put a person on inquiry, in a case where that species of notice is sufficient; but we have seen that to supply the place of registry, the law proceeds a step further."
A reference to some of the earlier decisions under the registry acts of England, will tend, I think, to explain these remarks, which were probably suggested by those decisions. One of the earliest, if not the first of the English recording acts was that of 7 Anne, ch. 20. That act differed from our general registry act in one important respect. It did not, in terms require that the party to be protected by the act should be a bona fide
purchaser. Its language was: "And that every such deed or conveyance, that shall at any time after, c., be made and executed, shall be adjudged fraudulent and void, against anysubsequent purchaser or mortgagee for valuable consideration,
unless," c.
The English judges found some difficulty at first in allowing any equity, however strong, to control the explicit terms of the statute. It was soon seen, however, that adhering to the strict letter of the act would open the door to the grossest frauds. Courts of equity, therefore, began, but with great caution, to give relief when the fraud was palpable. Hine v. Dodd (2Atk., 275), was a case in which the complainant sought relief against a mortgage having a preference under the registry act, on the ground that the mortgagee had notice. Lord HARDWICKE dismissed the bill, but admitted that "apparent fraud, or clearand undoubted notice would be a proper ground of relief." Again he said: "There *Page 357 
may possibly have been cases of relief upon notice, divested of fraud, but then the proof must be extremely clear."
 Jolland v. Stainbridge (3 Ves., 478), is another case in which relief was denied. The master of the rolls, however, there says: "I must admit now that the registry is not conclusive evidence, but it is equally clear that it must be satisfactorilyproved, that the person who registers the subsequent deed must have known exactly the situation of the persons having the prior deed, and knowing that, registered in order to defraud them of that title."
Chancellor KENT refers to these cases in Dey v. Dunham
(supra), and his remarks in that case, as to the effect, under the registry acts, of notice sufficient to put a party upon inquiry, were evidently made under the influence of the language of Lord HARDWICKE and the master of the rolls above quoted.
But the English courts have since seen, that if they recognized any equity founded upon notice to the subsequent purchaser of the prior unregistered conveyance, it became necessarily a mere question of good faith on the part of such purchaser. They now apply, therefore, the same rules in regard to notice, to cases arising under the registry acts, as to all other cases.
It will be sufficient to refer to one only among the modern English cases on this subject, viz., Whitbread v. Boulnois (1You. Coll. Ex. R., 303.) The plaintiff was a London brewer, and supplied Jordan, who was a publican, with beer. It was the common practice with brewers in London to lend money to publicans whom they supplied with beer, upon a deposit of their title deeds. Jordan had deposited certain deeds with the plaintiff, pursuant to this custom. He afterwards gave to one Boulnois, a wine merchant, a mortgage upon the property covered by the deeds deposited, which was duly recorded. Boulnois had notice of Jordan's debt to the plaintiff, and of the existing custom between brewers and publicans, but he made no inquiry of the brewers. The *Page 358 
suit was brought to enforce the equitable mortgage arising from the deposit. Baron ALDERSON held that the notice to Boulnois was sufficient to make it his duty to inquire as to the existence of the deposit; that his not doing so was evidence of bad faith; and the plaintiff's right, under his equitable mortgage, was sustained. No case could show more strongly that notice which puts the party upon inquiry is sufficient even under the registry act.
The cases in our own courts, since Dey v. Dunham andJackson v. Van Valkenburgh (supra), hold substantially the same doctrine. (Tuttle v. Jackson, 6 Wend., 213; Jackson
v. Post, 15 Wend., 588; Grimstone v. Carter, 3 Paige,
421.)
I can see no foundation in reason for a distinction between the evidence requisite to establish a want of good faith, in a case arising under the recording act, and in any other case; and the authorities here referred to are sufficient to show that no such distinction is recognized, at the present day, by the courts. The question, however, remains, whether this species of notice is absolutely conclusive upon the rights of the parties. The plaintiff's counsel contends, that knowledge sufficient to put the purchaser upon inquiry is only presumptive evidence of actual notice, and may be repelled by showing that the party did inquire with reasonable diligence, but failed to ascertain the existence of the unregistered conveyance; while, on the other hand, it is insisted that notice which makes it the duty of the party to inquire, amounts to constructive notice of the prior conveyance, the law presuming that due inquiry will necessarily lead to its discovery.
The counsel for the defendant cites several authorities in support of his position, and among others the cases of Tuttle
v. Jackson and Grimstone v. Carter (supra). In the first of these cases, WALWORTH, Chancellor, says: "If the subsequent purchaser knows of the unregistered conveyance, at the time of his purchase, he cannot protect himself against that conveyance; and whatever is sufficient to make it his duty to inquire as to the rights of others, is considered legal *Page 359 
notice to him of those rights;" and in Grimstone v. Carter,
the same judge says: "And if the person claiming the prior equity is in the actual possession of the estate, and the purchaser has notice of that fact, it is sufficient to put him on inquiry as to the actual rights of such possessor, and is good constructive notice of those rights."
It must be conceded that the language used by the learned Chancellor in these cases, if strictly accurate, would go to sustain the doctrine contended for by the defendant's counsel. Notice is of two kinds: actual and constructive. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion. Constructive notice, on the other hand, is a legal inference from established facts; and like other legal presumptions, does not admit of dispute. "Constructive notice," says Judge STORY, "is in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted." (Story's Eq. Juris., § 399.)
A recorded deed is an instance of constructive notice. It is of no consequence whether the second purchaser has actual notice of the prior deed or not. He is bound to take, and is presumed to have, the requisite notice. So, too, notice to an agent is constructive notice to the principal; and it would not in the least avail the latter to show that the agent had neglected to communicate the fact. In such cases, the law imputes notice to the party whether he has it or not. Legal or implied notice, therefore, is the same as constructive notice, and cannot be controverted by proof.
But it will be found, on looking into the cases, that there is much want of precision in the use of these terms. They have been not unfrequently applied to degrees of evidence barely sufficient to warrant a jury in inferring actual notice, *Page 360 
and which the slightest opposing proof would repel, instead of being confined to those legal presumptions of notice which no proof can overthrow. The use of these terms by the chancellor, therefore, in Tuttle v. Jackson and Grimstone v. Carter,
is by no means conclusive.
The phraseology uniformly used, as descriptive of the kind of notice in question, "sufficient to put the party upon inquiry," would seem to imply that if the party is faithful in making inquiries, but fails to discover the conveyance, he will be protected. The import of the terms is, that it becomes the duty of the party to inquire. If, then, he performs that duty is he still to be bound, without any actual notice? The presumption of notice which arises from proof of that degree of knowledge which will put a party upon inquiry is, I apprehend, not a presumption of law, but of fact, and may, therefore, be controverted by evidence.
In Whitbread v. Boulnois (supra), Baron ALDERSON laid down the rule as follows: "When a party having knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, does not make, but on the contrary studiously avoids making, such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained." This very plainly implies that proof that the party has used due diligence, but without effect, would repel the presumption. In this case, it is true, the decision was against the party having the notice. But in Jones v. Smith (1 Hare, 43), we have a case in which a party, who had knowledge sufficient to put him on inquiry, was nevertheless held not bound by the notice.
The defendant had loaned money upon the security of the estate of David Jones, the father of the plaintiff. At the time of the loan he was informed, by David Jones and his wife, that a settlement was made previous to the marriage, but was at the same time assured that it only affected the property of the wife. He insisted upon seeing the settlement, *Page 361 
but was told that it was in the hands of a relative, and that it could not be seen without giving offence to an aged aunt of the wife, from whom they had expectations. David Jones, however, after some further conversation, promised that he would try to procure it for exhibition to the defendant. This promise he failed to perform. It turned out that the settlement included the lands upon which the money was loaned. Here was certainly knowledge enough to put the party upon inquiry; for he was apprised of the existence of the very document which was the foundation of the complainant's claim. He did inquire, however, and made every reasonable effort to see the settlement itself, but was baffled by the plausible pretences of David Smith. The vice-chancellor held the notice insufficient. He said: "The affairs of mankind cannot be carried on with ordinary security, if a doctrine like that of constructive notice is to be refined upon until it is extended to cases like the present."
Possession by a third person, under some previous title, has frequently but inaccurately been said to amount to constructive notice to a purchaser, of the nature and extent of such prior right. Such a possession puts the purchaser upon inquiry, and makes it his duty to pursue his inquiries with diligence, but is not absolutely conclusive upon him. In Hanbury v. Litchfield
(2 Myl. Keene, 629), when the question arose, the Master of the Rolls said: "It is true that when a tenant is in possession of the premises, a purchaser has implied notice of the nature of his title; but if, at the time of his purchase, the tenant in possession is not the original lessee, but merely holds under a derivative lease, and has no knowledge of the covenants contained in the original lease, it has never been considered that it was want of due diligence in the purchaser, which is to fix him with implied notice, if he does not pursue his inquiries through every derivative lessee until he arrives at the person entitled to the original lease, which can alone convey to him information of the covenants." *Page 362 
This doctrine is confirmed by the language of Judge STORY, inFlagg v. Mann, et. al (2 Sumner, 554). He says: "I admit that the rule in equity seems to be, that where a tenant or other person is in possession of the estate at the time of the purchase, the purchaser is put upon inquiry as to the title; andif he does not inquire, he is bound in the same manner as if he had inquired, and had positive notice of the title of the party in possession."
It is still further confirmed by the case of Rogers v.Jones (8 N. Hamp., 264). The language of PARKER, J., in that case, is very emphatic. He says: "To say that he (the purchaser) was put upon inquiry, and that having made all due investigation, without obtaining any knowledge of title, he was still chargeable with notice of a deed, if one did really exist, would be absurd."
If these authorities are to be relied upon, and I see no reason to doubt their correctness, the true doctrine on this subject is, that where a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a bona fide
purchaser. This presumption, however, is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his part.
The judgment should be reversed, and there should be a new trial, with costs, to abide the event.