Amaziah Ellis, Respondent, *v.* August Horrman, Impleaded, etc., Appellant.

A junior mortgagee, whose mortgage was first recorded, cannot claim a preference under the Recording Act, as *bona fide* purchaser over a mortgage given by his mortgagor to secure part of the purchase-price of the premises, where, at the time of the delivery of his mortgage, he had knowledge that the whole purchase-money was not paid, and that the vendor had a lien therefor, and where information as to the nature and extent of such lien was easily accessible; he is chargeable with knowledge of all the facts which an inquiry properly made would have disclosed to him.

Some leading authorities on the subject of constructive notice collated.

(Argued October 12, 1882; decided December 12, 1882.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 14, 1882, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This was an action to foreclose a mortgage executed by defendant Salome Kleepfel to plaintiff.

On the 23d of June, 1874, the plaintiff sold and conveyed to said defendant between one and two acres of land with the buildings thereon, constituting a tavern stand situate at Plessis, in the township of Alexandria, in the county of Jefferson, for $2,750, and conveyed the same to her by deed dated on that day. Mrs. Kleepfel paid the plaintiff $1,000, part of the purchase-money, and to secure the balance, $1,750, gave him her bond for that amount, secured by a mortgage upon the premises con-

veyed. By the conditions of the bond and mortgage she was to pay $500 on the 1st day of September, 1874, and the remainder in three years from the date of the bond, with interest annually. The deed was recorded in the Jefferson county clerk's office on July 14, 1874, but the mortgage was not recorded until the 4th of December, 1874. The defendant Horrman and Mrs. Kleepfel and her husband were Germans, and friends and acquaintances of many years' standing. Horrman resided at Stapleton, on Staten Island, where he carried on the business of a brewer. Mrs. Kleepfel and her husband had for several years resided in Jefferson county. In April or May, 1874, Horrman, when on a visit to Mrs. Kleepfel and her husband at their home in Jefferson county, was told by Mrs. Kleepfel that she had no property "any more," and would like to do something to make a living. She was then looking at a hotel property at DePainville, and Horrman told her if she should buy any thing he would assist her in paying for it ; she agreeing to secure the advances made by him by a mortgage on the property purchased. Shortly afterward, and in May, she went to Plessis and saw the property in question and made a bargain for its purchase. On the 3d of June Horrman advanced her $200, and on the 13th of June $1,000 more. The $1,000 advanced to her on the 13th of June was used by Mrs. Kleepfel to make the first payment upon the property purchased. In August, 1874, Horrman again visited Mrs. Kleepfel and stopped at the hotel in question, which was then being kept by her. He was informed that she needed $500 more to pay on the property, which he promised to advance her, she promising to go to Watertown and execute a mortgage to him upon the property in question for $1,700, being the amount of his advances, to have the same recorded in the county clerk's office of Jefferson county, and forward to him at his home at Stapleton. He returned to New York and on the 31st of August, 1874, forwarded her his check for $500. On its receipt she paid the same to the plaintiff, went to Watertown, executed a mortgage to Horrman for $1,700, payable in ten years from date, and left the same with the county clerk for record, with instructions to forward the

same to the defendant Horrman. The plaintiff asked among other things, that his mortgage be adjudged to be a lien upon the premises prior and superior to the lien of the defendant Horrman's mortgage. To sustain his claim of priority the plaintiff alleged that the mortgage from the defendant Kleepfel to the defendant Horrman was made and recorded without consideration at the time, and with full knowledge by both parties thereto of the existence of the debt for which the plaintiff's mortgage was executed, and with full knowledge of the existence of said mortgage to the plaintiff upon the said premises and of the terms thereof. Mrs. Kleepfel did not answer, but the defendant Horrman appeared and answered, setting up his mortgage and the loan to secure which it was given, and averring that the mortgage to him was received without any notice, knowledge or belief on his part that said Kleepfel had executed and delivered the mortgage in the complaint set forth; and he claimed that his mortgage has priority over that of the plaintiff. The court before whom the action was tried found and determined that the plaintiff's mortgage had priority over that of the defendant, and gave judgment for the plaintiff.

*John Lansing* for appellant. The defendant Horrman, as mortgagee, was a purchaser under the statute. (2 R. S. [6th ed.] 1151, § 71; Willard on Real Estate, 122; *Van Keurin* v. *Corkins,* 6 T. & C. 355–357.) The mortgage to Horrman, having been first recorded, is presumptively the first lien. The burden was upon the plaintiff to show that the defendant Horrman did not act in good faith. (1 R. S. [6th ed.] 1138, § 1; *Freeman* v. *Shroeder,* 43 Barb. 618; *Peabody* v. *Roberts,* 47 id. 91–94.) The plaintiff could only overcome this presumption of law by proof that the defendant Horrman had notice of the plaintiff's mortgage. This notice must be direct and positive, or implied. (4 Kent's Com. 171, 172; 1 Story's Eq., § 398; Willard's Eq. 252, 253; Willard's Real Estate, 121; *Dey* v. *Dunham,* 2 Johns. Ch. 182–190; *S. C.,* 15 Johns. 555; *Jackson* v. *Given,* 8 id. 137–141; *Jackson* v. *Elston,* 12 id.

452–453; *Jackson* v. *Van Valkenburgh*, 8 Cow. 260–264; *Tuttle* v. *Jackson*, 6 Wend. 213–226; *Fort* v. *Burch*, 6 Barb. 60–78; *McMechan* v. *Griffing*, 3 Pick. 149; *Curtis* v. *Leavitt*, 15 N. Y. 1–192; *Peck* v. *Mallams*, 10 id. 509–518; *Brown* v. *Volkening*, 64 id. 76–83.) The defendant Horrman was a purchaser for a valuable consideration. (*Matter of Howe*, 1 Paige, 125–129; *Chase* v. *Peck*, 21 N. Y. 581–584; *Burdick* v. *Jackson*, 7 Hun, 488–490; *Nat. Bk. of Norwalk* v. *Lanier*, 7 id. 623; Willard's Eq. 284; 4 Kent, 351; Story's Eq., §§ 761, 762, 764; *Lowery* v. *Leav*, 3 Barb. Ch. 407; *Freeman* v. *Freeman*, 43 N. Y. 34; *Burdick* v. *Jackson*, 7 Hun, 488–490; *Pohalski* v. *Mut. L. Ins. Co.*, 4 J. & S. 234; affirmed, 56 N. Y. 640; *Carey* v. *White*, 7 Lans. 1–4; *S. C.*, 52 N. Y. 128–142; *Traders' Bk. of Rochester* v. *Bodman*, 43 Barb. 379; *Pratt* v. *Coman*, 37 N. Y. 440; 2 R. S. [6th ed.] 1119, § 169; *Coleman* v. *Van Rensselaer*, 44 How. 368; *Severance* v. *Griffith*, 2 Lans. 38; *Howe* v. *Fisher*, 2 Barb. Ch. 559; *White* v. *Carey*, 52 N. Y. 138–142; *Ware* v. *Westfall*, 21 Barb. 177–180.)

*D. Bearup* for respondent. A recorded mortgage given for an antecedent debt is not entitled to priority over a prior unrecorded mortgage whether the second mortgagee had notice of the prior mortgage or not. Such mortgagee is not a *bona fide* purchaser for a valuable consideration paid, within the meaning of the Recording Act. (*Dusenbury* v. *Hulbert*, 59 N. Y. 541–545; *Cary* v. *White*, 52 id. 138, 143; *Delancy* v. *Stearns*, 66 id. 157, 161–2; *Weaver* v. *Barden*, 49 id. 286, 290, 295; *Dickerson* v. *Tillinghast*, 4 Paige's Ch. 215; *Evertson* v. *Evertson*, 5 Paige, 644, 648; *Peck* v. *Mallams*, 10 N. Y. 509, 545; *Wood* v. *Robinson*, 22 id. 564, 567; *Jones* v. *Graham*, 77 id. 628; *Coddington* v. *Bay*, 20 Johns. 637; *Thompson* v. *Van Vetchen*, 27 N. Y. 581; *Van Husen* v. *Radcliff*, 17 id. 553–4.) The taking and recording of a mortgage for a precedent debt, without any agreement between the parties to it changing the situation of the debt, will not give it priority over a prior mortgage subsequently recorded,

whether the latter mortgagee had notice of the prior mortgage or not. (*Cary* v. *White*, 52 N. Y. 138–9 ; *Delaney* v. *Stearns*, 66 id. 157.) In order to protect a subsequent purchaser under the Recording Act, there must be a conveyance to him in writing. (*Westbrook* v. *Gleason*, 79 N. Y. 30 ; *Dusenbury* v. *Hulbert*, 59 id. 545–6.) Horrman got no lien in law or equity by the promise of a mortgage to secure money advanced to buy property of a third party. (*Marquet* v. *Marquet*, 7 How. Pr. 417 ; *Herrington* v. *Robertson*, 71 N. Y. 280.) An agreement otherwise valid to give a mortgage, must specifically relate to well identified property. (*Seymour* v. *C. & N. Y. C. R. R. Co.*, 25 Barb. 284.) Plaintiff's possession and his recorded deed of the premises were complete notice to Horrman at the time of the first two loans, and the suggestion of a mortgage for them by Mrs. Kleepfel. (*Dusenbury* v. *Hulbert*, 59 N. Y. 546 ; *Campbell* v. *Veeder*, 3 Keyes, 177 ; *Williamson* v. *Brown*, 15 N. Y. 354 ; *Stearns* v. *Gage*, 79 id. 106–7 ; *Kellogg* v. *Smith*, 26 id. 23–24 ; *Brumfield* v. *Boutal*, 24 Hun, 451 ; *Merritt* v. *N. R. R.*, 12 Barb. 609–610 ; *Brown* v. *Blydenburg*, 7 N. Y. 141–5–6 ; *Brown* v. *Volkening*, 64 id. 82 ; *Reed* v. *Gannon*, 50 id. 345 ; *Jackson* v. *Cadwell*, 1 Cow. 623, 641–2.) The burden is on Horrman to aver and prove facts entitling his mortgage to priority. (*Jewett* v. *Palmer*, 7 Johns. Ch. 64 ; *Harris* v. *Norton*, 16 Barb. 264–5 ; *Westbrook* v. *Gleason*, 79 N. Y. 23–33 ; Abbott's Trial Ev. 715, 716 ; *Frost* v. *Beekman*, 1 Johns. Ch. 288, 301 ; *Gallatian* v. *Cunningham*, 8 Cow. 361, 374 ; *Balcom* v. *N. Y., L. I. & F. Co.*, 11 Paige, 454 ; *Peck* v. *Mallams*, 10 N. Y. 509, 529.) Mrs. Kleepfel, having acted as the agent of Horrman in making and recording his mortgage, knew all the facts and intended it as subject to plaintiff's mortgage, and Horrman is chargeable with all the knowledge his agent possessed. (*Green* v. *Warnick*, 64 N. Y. 220 ; *Westbrook* v. *Gleason*, 79 id. 39–41 ; *Delancy* v. *Stearns*, 66 id. 161 ; *Jackson* v. *Van Valkenburgh*, 8 Cow. 260 ; *Decker* v. *Boice*, 83 N. Y. 218 ; *Freeman* v. *Schroder*, 43 Barb. 618, 621 ; 79 N. Y. 23, 33 ; *Jones* v. *Phelps*, 2 Barb. Ch. 440,

446; *Adams* v. *Mill*, 60 N. Y. 539; *Nat. Life Ins. Co.* v. *Minch*, 53 id. 149; *Bk. of U. S.* v. *Davis*, 2 Hill, 452, 461; *Dillon* v. *Anderson*, 43 N. Y. 238; *Sutton* v. *Dillaye*, 3 Barb. 529; *Fulton Bk.* v. *N. Y. & S. Co.*, 4 Paige, 137; *Davis* v. *Lamar Ins. Co.*, 18 Hun, 230; *Master* v. *Madison Co. M. Ins. Co.*, 11 Barb. 625, 632; *Hodgkins* v. *M. Co. Ins. Co.*, 34 Barb. 215; *Ames* v. *N. Y. U. I. Co.*, 14 N. Y. 253, 263; *Schoick* v. *N. F. Ins. Co.*, 68 id. 434, 438; *Ingalls* v. *Morgan*, 10 id. 178, 184, 185; *Boyd* v. *Vanderkemp*, 1 Barb. Ch. 274, 287; *Partridge* v. *Com. Ins. Co.*, 17 Hun, 95; Story on Agency [4th ed.], § 140, p. 170.)

TRACY, J. The defendant was beaten in the court below upon two grounds, either of which, if sustained, is fatal to his defense. *First.* That at the time of the execution of the mortgage by Mrs. Kleepfel to the defendant, "facts and circumstances had been brought to his (defendant's) knowledge relating to said Mrs. Kleepfel's purchase of the mortgaged premises of the plaintiff and of the unpaid balance by her of the purchase-price, and the plaintiff's lien on the premises therefor, and the existence of his mortgage thereon, sufficient to put him, a man of ordinary prudence and discretion, upon inquiry, and upon his guard as to the plaintiff's lien for the purchase-money and the terms of his mortgage. That the means of full and complete information as to the aforesaid rights of the plaintiff were immediately and conveniently accessible to said Horrman, and were sufficiently suggested to him by the facts and circumstances within his knowledge, and that he was not put off from his guard, or from inquiry, by any misreprensentations or otherwise." *Second.* That the mortgage executed by Mrs. Kleepfel to Horrman was given to secure a pre-existing debt, and nothing was parted with by said Horrman on the faith of the mortgage at the time the same was executed.

As we have reached the conclusion that this judgment must be affirmed on the first ground stated by the court below, it is unnecessary to examine or pass upon the second ground.

The court does not find, and we think there is no evidence in the case which would have justified a finding that the defendant Horrman had express notice of the existence of the plaintiff's mortgage. But the court does find that the defendant knew that Mrs. Kleepfel had no means of her own, either to pay or to secure the payment of the purchase-money. He also knew that she was in possession of the premises, a portion of the purchase-money remaining unpaid. As he is presumed to know the law, he must be deemed to have known that the vendor had a lien upon the premises conveyed for such part of the purchase-money as remained unpaid or unsecured. We think the defendant, under the circumstances of this case, was bound to show that at the time he made the last advance to Mrs. Kleepfel he acted under the belief that the advances made by him were sufficient to pay in full the purchase-price of the property. We have carefully read the evidence and fail to find any thing therein which would warrant the inference that the defendant acted under such a belief. He did not agree to advance to Mrs. Kleepfel money sufficient to pay for any property which she might purchase and then take a mortgage on the property that he had paid for. The language of Mrs. Kleepfel is: "I asked him if he would let me have some money; he said yes, if I should buy any thing he would let me have some money." And at the time the last advance of $500 was made, in August, she testifies: "I asked him for $500 before he went away. I told him I couldn't pay any thing in a short time, because I had to pay $500 to the other man in September; I told him I hadn't got any money, and that I must have $500 more, and if he would I would give him a mortgage." He said: "If you will give me a mortgage I'll give you the $500."

"Q. Did you tell him what you were going to do with that $500? A. That I wanted to pay it on the place. Q. Then he did know that you owed something on the place? A. I told him I had to pay $500 on the place now." This evidence is not contradicted by the defendant, and we find in it no statement or suggestion by Mrs. Kleepfel that the $500 would pay all that was due upon the place. On the contrary, it conveys

to the defendant a distinct notice that the purchase-money was then unpaid; and the language, " I told him I had to pay $500 on the place now," is suggestive that more was to follow ; at all events, knowing, as the defendant did, that nothing had been paid upon the place except the money advanced by him, and being informed of facts which amounted to a notice that the vendor still had a lien upon the property for unpaid purchase-money, we think he was bound to inquire as to the extent of that lien. Notice sufficient to make it the duty of a purchaser to inquire, and failure so to do when information is easily accessible, is equivalent to actual notice within the rule of the authorities. In *Williamson* v. *Brown* (15 N. Y. 354) the rule is stated by SELDEN, J., at page 362, as follows: " The true doctrine on this subject is that where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser." And PAIGE, J., in the same case states the rule as follows : " A party in possession of certain information will be chargeable with a knowledge of all facts which an inquiry suggested by such information, prosecuted with due diligence, would have disclosed to him." (Citing as authority *Howard Ins. Co.* v. *Halsey,* 4 Sandf. Sup. Ct. 578 ; *Kennedy* v. *Green,* 3 Mylne & Kees., 699.) In 4 Sandford, *supra,* DUER, J., states the rule as follows : " The rule of law that must govern our decision is as inflexible as it is just, that he who is bound to inquire before the performance of an act, by which he has reason to believe that the rights of others may be affected, is chargeable with a knowledge of all the facts that an inquiry properly made would have disclosed to him." In *Flagg* v. *Mann et al,* (2 Sumner, 554), STORY, J., states the rule as follows: " If he does not inquire he is bound in the same manner as if he had inquired and had positive notice of the title of the party in possession." In *Whitebread* v. *Jordan* (1 You. & Coll. Exch. 303) the plaintiff was

a London brewer, and supplied Jordan, who was a publican, with beer. It was the common practice with brewers in London to loan money to publicans whom they supplied with beer, upon a deposit of their title deeds. Jordan had deposited certain deeds with the plaintiff, pursuant to this custom. He afterward gave to one Boulnois, a wine merchant, a mortgage upon the property covered by the deeds deposited, which was duly recorded. Boulnois had notice of Jordan's debt to the plaintiff and of the existing custom between brewers and publicans, yet he made no inquiry of the brewer. Suit was brought to enforce the equitable mortgage arising from the deposit. Baron ALDERSON held that the notice to Boulnois was sufficient to make it his duty to inquire as to the existence of the deposit; that his not doing so was evidence of bad faith, and the plaintiff's right under his equitable mortgage was sustained.

In *Kellogg* v. *Smith* (26 N. Y. 18–21), ALLEN, J., in a dissenting opinion, admits the correctness of the rule as stated by Judge SELDEN in *Williamson* v. *Brown*. In *Tuttle* v. *Jackson* (6 Wend. 213–226), cited by the counsel for the appellant, the rule is stated by the chancellor as follows: " Whatever is sufficient to make it his duty to inquire as to the rights of others is considered legal notice to him of those rights." (*Grimstone* v. *Carter*, 3 Paige, 421; *Jackson* v. *Post*, 15 Wend. 588.) The case of *Reed et al.* v. *Gannon* (50 N. Y. 345) would seem to be directly in point as a controlling authority in this case. The parties dealt upon the assumption that there were liens or incumbrances upon the property, but the number or extent, or character of the liens was not stated or referred to. RAPALLO, J., says " the insertion of these clauses in the instrument was sufficient to put the plaintiff on inquiry as to the extent and description of the existing incumbrances referred to. It was such notice as, in the language of the authorities, would lead any honest man using ordinary caution to make further inquiries. (1 Younge & Coll. Exch. 328.) To deprive a party of the character of a *bona fide* purchaser it is not necessary in such a case to show express notice of the particular instrument. (*Taylor* v. *Baker*, 5

Price, 306.)  Notice of any fact calculated to put the party on inquiry is, in the absence of. explanation by him, sufficient to charge him with notice of all instruments which an inquiry would have disclosed.  As we have seen, the defendant Horrman had information, which amounted to notice that the vendor had a lien upon the property for unpaid purchase-money. Having notice of the lien he was bound to inquire as to its extent and the manner by which payment of it was secured. The most obvious and natural inquiry to be made in this case would have been of Mrs. Kleepfel, and it would have been her plain duty to have answered any inquiry which Horrman might make as to the particulars and extent of the lien referred to.  Had he inquired, there is no doubt that he would have been truly informed as to the plaintiff's mortgage, for Mrs. Kleepfel testifies that she supposed that the plaintiff's mortgage was at the time on record, and intended the defendant's lien upon the property to be subsequent to that of the plaintiff's. In failing to make such inquiry, we think the defendant must be held to have had notice of the facts which it would have disclosed had it been made.  It cannot, therefore, be said of the defendant that he took his mortgage in ignorance of the plaintiff's lien upon the property in question.  We have carefully examined the numerous authorities cited by the learned counsel for the appellant, and while there are expressions by judges to be found in many cases which would seem to hold that actual notice of the particular lien was necessary in order to defeat a subsequent deed first recorded, we do not think there is any case which, in decision, is in conflict with the rule as stated by SELDEN, J., in *Williamson* v. *Brown (supra)*. But, however that may be, there can be no doubt that the great current of authority is in harmony with the rule as there stated, and it has been too frequently approved by this court to be overruled or disregarded now.

We think the defendant must be deemed to have had notice of the plaintiff's lien, and the judgment should, therefore, be affirmed, with costs.

All concur, except ANDREWS, Ch. J., and EARL, J., not voting. Judgment affirmed.