HANNAH M. VAN EPPS, Respondent, *v.* SIMON CLOCK *et. al.*, Appellants.

*Supreme Court, Fourth Department, General Term, July 20, 1889.*

1. *Contract. Specific performance.*—In an action for the specific performance of a parol contract to convey land, possession under the contract and acts of ownership in making improvements are a sufficient performance to take a parol agreement out of the statute of frauds.

· 2. *Same. Bona fide purchaser.*—The fact that the vendee under the parol contract was in possession, exercising acts of ownership, within the sight and knowledge of the subsequent purchaser, precludes the latter from claiming that he is a purchaser in good faith. ·

· 3. *Same. Rights of purchaser.*—The rights of a person in possession of land under a parol contract for a sale thereof are not prejudiced or diminished by a compulsory surrender of possession to a subsequent purchaser, who has notice of the contract and claim of ownership.

4. *Same. Statute of frauds.*—Where a vendee of real estate under a parol contract relies upon his entry into possession to take it out of the statute of frauds, such entry must be connected with, and be referable to, the contract, and it must clearly appear that he took possession by the known permission of the vendor.

Action to compel specific performance of an oral contract to sell a certain piece of real estate, upon the ground that the plaintiff entered into possession under the contract, and partly performed the same.

Appeal from a judgment in favor of plaintiff entered upon the decision of the court.

*S. Earl*, for appellant Clock; *M. E. Driscoll*, for appellant Wells.

*W. G. Tracy*, for respondent.

HARDIN, P. J.—In Lobdell *v.* Lobdell (36 N. Y. 330), it was said, viz.: "The rule which courts of equity have adopted in suits for the specific performance of contracts, requires that the contract be established by competent and satisfactory proof, to be clear, definite, and certain, for the reason, as Judge STORY expressed it, that a court of equity ' ought not to act upon conjectures,' and if the proof should end in leaving the contract uncertain, so that the court cannot say what its precise important limitations are, a decree for the specific performance will be withheld. All this depends upon the evidence, and if evidence is given in the court below, tending to the establishment of such a contract, the sufficiency of the proof to satisfy the mind of the court as to the existence of the contract, with the requisite degree of clearness and certainty, is not a matter for this court to consider."

Findings have been made by the trial judge upon evidence which, to his mind, was satisfactory, and although there was some conflict in the evidence, the conclusions reached by him, seems to us, from an examination of the appeal book, to accord with the weight of the testimony.

Sheldon Smith had, for several years, been entrusted with business transactions for the defendant Clock; however, in April, 1887, as he testifies, he "had no other business for him, Clock, except this." (folio 23.) On April sixth, Smith addressed a letter to Clock in reponse to a letter which he had theretofore received from Clock, in which Smith said, viz.: "I went and seen to that wood lot, and paid the tax on it; it was thirty-one dollars. Mr. Van Epps would like to buy

it this spring; he wanted me to ask you how much you want for it." That letter was received by defendant Clock, and on the 15th of April, 1887, in response to Smith's letter, he says: "How about the wood lot; my price is $250 ; that is what it cost me, and I will sell it for that sum. Please tend that business for me. I want you to let me know in time so that I may know how it is."

Reading the language just quoted in connection with the circumstances surrounding Clock and Smith, and considering the relations existing between them, we are inclined to the opinion that the expression: "Please tend that business for me," was used for the intention of soliciting Smith to attend to the business of selling the wood lot for Clock, for the sum of $250. Smith evidently so understood the letter, and evidently so informed the plaintiff and her husband, for, after receiving it, he held an interview with the husband in behalf of the plaintiff, and according to his testimony, he left his home in Cicero, and went to see the husband of the plaintiff. He expressed it in his testimony as follows : "Not long after receiving this letter, I went to Mr. Van Epps, and took the letter with me. * * * I was down there, and they wanted to buy it at that price, and wanted me to write to Mr. Clock, and I did so; then they said they would take it at that price, and then wanted me to write to Mr. Clock that they would take it at that price, and I done so, and I never got any answer, to that letter; whether he would or would not, at all ; * * * they claim it was a bargain: they said they would take the place; I showed them the letter; * * * they said they would pay the money the first of June, when Mr. Clock came up ; I told him he had to come up about the first of June, and would be up if nothing happened more than we knew of; he said if he had it he wanted to clear up some and put it to buckwheat or something ; * * * I might have said it would not make any difference or something ; * * * I don't know whether I did or not; I then went home and wrote

to Mr. Clock;   *   *   *   how soon after I got home I can't tell; it might have been a day or two, or three or four; I never received any reply to the letter I wrote him; I directed my letter to defendant Clock, at Minden, Montgomery county; that is his post-office address;   *   *   * the last letter I wrote to Mr. Clock, and the one to which I received no reply, stated, as near as I can tell, that Van Epps would take the lot at that price, and would have his money for him when he came up the first of June." The testimony of the plaintiff and her husband, in respect to the details of the conversation held with Smith, in the negotiation for the land, is more full and complete, and the circumstance that the letter which he, Smith had received from Clock, was brought out more distinctly, and the circumstances attending the conversation more fully discussed, and the treaty held with Smith, as the supposed agent, with apparent authority to act for Clock in the sale of the wood lot, was given.

Their testimony also indicates that they were to be permitted to take immediate possession of the premises, and that they did so, and commenced labor thereon and continued to exercise acts of ownership and acts indicative of possession, and to make alterations in the fences and the surface of the land in cutting away the brush and underbrush, continued such acts of ownership from the day following the purchase up to the fourteenth of May, which was the occasion of their receiving their first intimation that their contract made with Smith was not to be carried out—was doubted or disputed—and that Wells had interfered and procured a deed from Clock of the premises.   We think the evidence was sufficient to sustain the findings of the trial judge to the effect:

*First.* That Smith appeared to have authority to make a sale of the premises to the plaintiff on the occasion when the negotiation was had.

*Second.* That the plaintiff acted upon the apparent authority of Smith and was warranted in doing so.

*Third.* That she took possession in virtue of the negotiations and arrangement made with Smith in respect to the premises,

*Fourth.* That the several acts of ownership and the possession were in virtue of and under the agreement made with him, and they were " sufficient performance to bring it within the well-settled rule that partial performance takes a parol agreement out of the statute of frauds." Beardsley *v.* Duntley, 69 N. Y. 584.

While the improvements were slight, while the expenditures of the plaintiff and her agent upon the land were not great, while the money value of the improvement made by her was moderate in amount, it must be borne in mind that the purchase price or value of the land was moderate. The purchase price was $250. There is some evidence, and there is a finding that the value of the land was $400. Apparently, the expenditures in repairing the fences and cutting up the brush and underbrush and improving the lands, expenditures and improvements prior to the 14th of May, 1887, may not have exceeded ten per cent of the purchase price of the land, yet under all the circumstances disclosed by the evidence given at the trial, we are constrained to say that the conclusion of the trial judge must be allowed to stand.

We are not able to say, after giving such influence to his findings as they might legitimately receive in a case of this character, that his conclusion upon the facts is against the weight of the evidence found in the appeal book. We therefore accept his findings of fact in respect to the circumstances of the negotiation, contract made with Smith as the avowed agent of Clock, and having the apparent authority from Clock to consummate a sale of the property to the plaintiff. Significance must be given to the circumstance, that appears beyond cavil, that about the 1st of May, 1887, Smith wrote a letter to the defendant Clock which apprised him of the negotiation and sale of the premises. In that letter Smith said : " I went over and seen the man about

this wood lot. He said he would get the money for you. He said he would give your price, $250, for it. * * * Mr. Van Epps will take the lot when you come up."

The defendant, after receiving that letter, made no reply. He in no manner refused to be bound by the arrangement which was thus communicated to him.

Apparently, he acquiesced in the sale of the property of which he was thus apprised. It seems, from the testimony, that when the agent of the defendant, Wells, applied to Clock for the purchase of the land, he seemed to understand that an arrangement had been made by which the plaintiff was to have the same, or that she had become the purchaser thereof. In one of the interviews held with him, the defendant, said, viz.: "He refused three different times to Mr. Marsh; that we were going to have the place; that is what Mr. Clock told me himself; that Van Epps' folks were going to have the place." (Fol. 183.)

Considering this evidence with the other we have referred to, we are of the opinion that the defendant Clock became bound by the arrangement which was made between the plaintiff and Smith in respect to the lands. Lawrence *v.* Taylor, 5 Hill, 107.

We have no doubt the learned counsel for the appellant Clock is correct when he states, viz., " that the plaintiff and the defendant Wells had been for some time vying with each other in their attempts to buy these eight acres, and considerable feeling had arisen between them on the subject;" and we are also of the opinion that the facts and circumstances disclosed by the evidence in respect to the occupation of the premises under the arrangement made with Smith for the purchase of the same by plaintiff, were sufficient to put the defendant Wells upon inquiry in respect to the rights of the plaintiff in virtue of the arrangement made with Smith. If inquiry had been prosecuted with diligence it must be presumed Wells would have ascertained the precise state of the arrangement between Smith,

as the agent for Clock, with the plaintiff. Wells must be dealt with in the same manner as though he had prosecuted the matter with diligence and ascertained the actual situation.

According to Williamson v. Brown (15 N. Y. 854), it may be said the negligence of Wells in not prosecuting the inquiry is "fatal to his claims to be considered a *bona fide* purchaser." As we said in Brumfield v. Boutall (24 Hun, 456), the rule requires "clear and strong circumstances," upon which the notice is found. We think the evidence in this case sufficiently comes within the rule which we laid down in that case, and we may add, from the language used in the case from which we. have just quoted, viz. : " We think it was just such a notice as would have awakened the diligence of a prudent man."

We think there was such notice as, under the authorities, warranted the court in saying that the defendant Wells had actual notice of the relations which the plaintiff sustained to the property at the time he negotiated with Clock, and parted with his money, and took a deed of the premises. Ellis v. Horrman, 90 N. Y. 473.

The plaintiff was in possession, exercising acts of ownership within the sight of, and within the knowledge of, the defendant Wells before he (Wells) sought to conclude an arrangement with the defendant Clock. If he did not make adequate inquiry it was his own fault.

It was said by Judge STORY, in Flagg v. Mann (2 Sumner, 554) : " If he does not inquire he is bound in the same manner as if he had inquired and had positive notice of the title of the party in possession."

In Tuttle v. Jackson (6 Wend. 213), the chancellor said : " Whatever is sufficient to make it his duty to inquire as to rights of others is considered legal notice to him of those rights. These cases were cited and followed in the opinion of the court in Ellis v. Horrman (*supra*). See page 474.

Plaintiff resisted the efforts of Wells to obtain possession

of the premises for some time. He persisted, however, in a resolute way by forcible means. He expelled her from the possession and obtained possession himself after he acquired the deed from Clock. Such possession, under such circumstances, however, gives him no added rights. He stands in the same relation to the property in equity that he would have occupied had she continued to assert her possession down to the day the action was commenced or down to the day of the trial thereof. We find nothing in Haight *v.* Child (34 Barb. 186) or Merrill *v.* Cooper (65 Id. 519) which warrants us in saying that plaintiff's rights are any the less by reason of the compulsory surrender of possession after the purchase or deed taken by the defendant Wells.

We recognize the rule pressed upon our attention by the learned counsel for the appellant, Clock, that " where a vendee of real estate under a parol contract, relies upon his entry into possession to take it out of the statute of frauds, his entry must be connected with and referable to the contract, and it must clearly appear that he took possession by the known permission of the vendor. If possession be taken without such permission, express or implied, it is no foundation for relief in equity according to any of the authorities." ·

And as was held in Merrill *v.* Cooper, the possession must refer to the agreement of which performance is sought, but as we have already said, the trial judge has found upon adequate evidence that the possession of the plaintiff was in virtue of the contract; and her acts of ownership, her improvements to the land, to the fences, were made in virtue of the permission to take possession given to her by Smith at the time he consummated the arrangement, that she might have the land upon paying $250 therefor to Clock when he came up in June, and that she might have immediate possession thereof.

*Second.* We are of the opinion that the court committed no error in allowing the witness Smith to state what arrange-

ment was made with the plaintiff (fol. 32) ; nor in stating the price for which she might have the land (fol. 40) ; nor in making the ruling allowing the circumstances of that arrangement to be given in detail by the plaintiff (fol. 91) ; nor allowing the witness to state what was done upon the property after possession was taking in pursuance of the contract ; nor in giving " general description " of the land (fol. 102).

Nor do we think it was error to receive the evidence in respect to the struggle between plaintiff and Wells over the possession of the property after she received notice from Wells that he claimed to have purchased the same (fols. 114 to 116).

Nor do we think the defendants were prejudiced by admission of testimony tending to show that the value of the land was $400.   § 1003.

" We have found nothing in the course of the trial which warrants us in disturbing the disposition made of the case upon the merits.

Judgment affirmed, with costs.

MARTIN and MERWIN, JJ., concur.