HOMER KNAPP, Respondent, *v.* LEO J. HALL, Appellant.

*Building restrictions attached to land — notice of, to a purchaser under an unrestricted deed.*

To entitle a purchaser of a city lot under a deed containing building restrictions to enforce the same restrictions against the purchaser of an adjoining lot from the same original common grantor under a deed containing no restrictions, on the ground that the defendant had notice that the restrictions were imposed by the original common grantor upon all the lots in the tract, it is not enough for the plaintiff to show that the original common grantor stated and represented to each purchaser of lots in the tract that all the lots would be sold subject to such restrictions and that the defendant knew that prior purchasers of lots had taken them subject to such restrictions, but the plaintiff must also show that the defendant knew that at the time the plaintiff purchased his lot he was induced to make such purchase under the representations of the grantor that the same restrictions were to be extended to the lot purchased by the defendant.

The purchaser of a lot under a deed containing no building restrictions is not required to look up the original purchasers of the other lots in the same tract from the original common grantor, and learn from them what oral representations were made to them to induce them to purchase, or, on failure so to do, be deemed affected with notice of, and subjected to, restrictions upon the use of his premises based upon such oral representations.

APPEAL by the defendant, Leo J. Hall, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Monroe county on the 19th day of August, 1892, on a decision of the court rendered upon a trial at the Monroe equity term.

*Theodore Bacon*, for the appellant.

*John F. Dorthy*, for the respondent.

Fifth Department, June Term, 1893.            [Vol. 70.

Haight, J.:

This action was brought to enjoin the defendant from building a house within fifteen feet of the street line.

In 1887 Fred. S. Mings and Cass Williams were the owners of a parcel of land in the city of Rochester known as the Beechwood tract, which they caused to be surveyed and mapped dividing it into 117 city lots. The lots were then placed upon the market, and the firm of Culver & Crane, real estate agents, was employed to conduct the sale. This firm sold a number of the lots subject to the following conditions : " That the building or dwelling house to be erected on said lot shall stand not less than fifteen feet back from the front of said lot and from the line of said avenue, and shall not be of less value than $1,500, and the main part to be two full stories high, and the barn and other buildings or structures appurtenant to such building or buildings shall be put on the rear portion of said lot ; * * * that no wines, spirituous or malt liquors shall be made, manufactured, kept for sale or sold on said premises for a profit or otherwise." On the 5th day of October, 1888, one James Marden purchased four lots, including lot No. 77, subject to the conditions and restrictions aforesaid, which last-mentioned lot he conveyed to the plaintiff on the 18th day of December, 1890. On the 10th day of April, 1891, the defendant purchased adjoining lots, Nos. 76 and 78, without conditions or restrictions of any kind, and commenced to build thereon, within fifteen feet of the street line.

The trial court found as facts, that the defendant, before he purchased lots 77 and 78, had knowledge and notice that the covenants and restrictions mentioned had been imposed by the grantors upon all the lots of the tract lying west of Chamberlain street. An exception has been taken to this finding, and the only question which we shall consider is, as to whether it is against the weight of evidence.

The conditions and restrictions mentioned were inserted in the deeds of the purchasers of lots in this tract, but there is nothing in their deeds as to any covenant or agreement on the part of the grantors that the other lots in the tract shall only be sold upon like conditions and restrictions. We shall assume, however, that to each purchaser the agents of the grantors stated and represented that all of the lots would be sold subject to the conditions and restrictions

named. We shall also assume that the defendant knew that prior purchasers of lots had taken them subject to these conditions and restrictions. This, however, is not enough to entitle the plaintiff to maintain his action. He must show that the defendant also knew that at the time the plaintiff purchased his lot he was induced to make such purchase under the representations of the grantors or their agents that the same conditions and restrictions were to be extended to the lots purchased by the defendant. Has this fact been established? As we have seen, there is nothing in the deeds or in the records thereof that show that such representations were made. The plaintiff testified to an admission on the part of the defendant to the effect that he knew of the restrictions on the Beechwood tract before he purchased, that he paid a big price for the lots and proposed to utilize them as he saw fit, or to his own personal advantage. The defendant did not, however, admit that he knew that the conditions and restrictions covered all of the lots of the tract, including those purchased by himself. On the other hand, he testified that he did not know that there were any restrictions upon the lots purchased by him; that he inquired of Mings, the grantor, and was informed that there were not; that he also inquired of the grantors' attorneys who had drawn the deeds conveying the lots in the tract, and was informed that they were all right; that he had the title examined by attorneys, and received a like report. Mings testified that shortly after the tract had been surveyed and put in the hands of Culver & Crane to sell, and before any of the lots had been sold, he withdrew from the agents lots 77, 78, 115 and 116, and informed them that these lots were to be withdrawn from the market, and were to be reserved for business purposes; that lots 115 and 116 are separated from lots 77 and 78 by Chamberlain street; that in 1887 lots 115 and 116 were sold to the Rochester and Glen Haven Railroad Company, without restrictions, which company has constructed a depot thereon; and, that as he understood it, it was generally known that no restrictions were to be placed upon lots 77 and 78. Williams, the other grantor, also testified to the withdrawing of these lots, that they were to be reserved for business purposes, and were not to be restricted. Their testimony is corroborated by other witnesses.

The trial judge, in his opinion, says, that when Mings and Wil-

liams reserved these lots, nothing " was said as to their exemption from such restrictions, and it seems that Culver & Crane continued thereafter to assure purchasers, and in one instance at least in Mr. Mings' presence, that these restrictions covered the entire tract." Assume this to be so ; but where is the evidence that the defendant knew of such representations ?

Again, the trial judge says : " But the most conclusive evidence upon this point is defendant's own admission, upon his cross-examination, that when he purchased lots 77 and 78 he knew that all the other lots had been sold subject to restrictions." Very true. He knew this, but, as he testified, he did not know that they purchased under the representation that the restrictions should also cover the lots that he purchased.

The trial judge further states : " With this information in his possession, the duty was certainly imposed upon the defendant of ascertaining whether or not the restrictions which applied to the other lots, in any manner affected those he was negotiating for." He did inquire. He inquired of the grantors, and of the attorneys who had done the conveyancing upon the tract for the grantors ; he had the records searched, and attorneys pass upon the title. But it is said : " He appears to have scrupulously avoided making any inquiries of parties who were in a position to know the precise situation of affairs." Did not the grantors know the precise situation of affairs ? They were the parties who had exacted the conditions, and imposed the restrictions. And again : " Had he spoken to the owners of adjoining lots, he might easily and speedily have ascertained that they had made their purchases upon assurance that all the lots were to be restricted alike, and his omission of this plain duty, it seems to me, establishes such negligence on his part as cannot be attributed to an ordinarily prudent man, and consequently charges him with the knowledge he ought to have possessed." The present owners would have known nothing of the oral representations made by Mings and Williams to induce purchasers to take the lots unless they were the original purchasers. It follows, therefore, that it was the duty of the defendant to look up the original purchasers of the lots and get their version as to what oral representations were made to them to induce them to purchase ; that failing in this, he must have conditions and restrictions imposed upon the use of his premises.

This case was once considered by this court upon an appeal from an order denying the defendant's motion to vacate and set aside an injunction *pendente lite.* (43 N. Y. St. Repr. 95.)

LEWIS, J., in delivering the opinion of the court, says: " If the rights and interests of the appellant to the lands which he holds under a deed containing upon its face no restrictions, are to have easements or servitudes imposed upon them by the parol declarations and promises made to others by his grantors, the proceedings should not be based upon shadowy and uncertain evidence." And yet the trial court has found that because the defendant neglected to look up the original purchasers and to question them as to what oral representations were made, that he is chargeable with knowledge that such representations were made. We think this is going too far. It would practically nullify the recording act and would permit titles to lands to be defeated if the purchaser neglects to inform himself as to the oral understandings of his neighbors. A purchaser of lands is chargeable with notice of facts affecting the title which could be discovered by an examination of the deeds or other muniments of title, and where there is an outstanding mortgage or lien unrecorded and he has had notice of its existence, it becomes his duty to inquire and ascertain the extent of the rights of the person holding the same. ( *Williamson* v. *Brown*, 15 N. Y. 354 ; *The Cambridge Valley Bank* v. *Delano*, 48 id. 326 ; *Ellis* v. *Horrman*, 90 id. 466.)

But these cases do not go to the extent of sustaining the respondent's claim.

It appears to us that the defendant made all of the inquiry usually made by prudent men, and that the finding that he knew that the sales made to the plaintiff and other purchasers were made under the oral representations that the conditions and restrictions named should cover all of the lots in the tract, including those purchased by him is against the weight of evidence.

Judgment should be reversed and a new trial ordered, with costs to abide the final award of costs.

DWIGHT, P. J., LEWIS and MACOMBER, JJ., concurred.

Judgment appealed from reversed and new trial granted, costs to abide the final award of costs.