Auburn Button Company, Appellant, *v.* Philip L. Sylvester, Respondent, Impleaded with E. Delevan Woodruff and J. Herman Woodruff.

*Notice of a conflicting title, imputed to an intending purchaser having knowledge of facts sufficient to put him upon inquiry — purchase of a patent — notice of a prior unrecorded assignment.*

Where there is some title or interest in conflict with that which a person is proceeding to purchase, and he has knowledge of facts sufficient to put him upon inquiry as to the existence of such title or interest, he is chargeable with notice of it.

The presumption of notice arising from the possession of knowledge sufficient to put him upon inquiry may be repelled, however, by the purchaser showing that he has diligently and duly pursued the inquiry and been unable to ascertain that any title or interest in conflict with that which he is seeking to obtain exists.

On the formation of a corporation, as successor to the manufacturing business of a firm, the firm assigned to the corporation a patent belonging to the firm covering machines which had been and which continued to be used in the business. This assignment was not recorded, and some years after it was executed one of the members of the firm made an assignment of the same patent, in the name of the firm, to a person who had been in the employ of the firm until the organization of the corporation and thereafter in the employ of the corporation, and who was cognizant of the fact that the machines by which use was made of the patent in the business were in the possession of and used by the corporation from the time of its organization.

*Held*, that the grantee of the later assignment had knowledge of facts sufficient to put him upon inquiry as to the prior unrecorded assignment to the corporation, and must, in the absence of evidence to the contrary, be deemed to have notice thereof;

And, hence, that he was not entitled to a preference over the corporation under the statute of the United States (U S. R. S. § 4898), which provides that an assignment of a patent shall be void " as against any subsequent purchaser or mortgagee for a valuable consideration *without notice*, unless it is recorded in the patent office within three months from the date thereof "

APPEAL by the plaintiff, the Auburn Button Company, from a judgment of the Supreme Court, entered in the office of the•clerk of Cayuga county on the 25th day of December, 1892, dismissing the complaint upon the merits, upon a decision of the court rendered after a trial by the court at the Cayuga Special Term.

The action was brought to restrain the defendant Sylvester from selling or incumbering certain letters patent issued in 1882 to the defendants, E. Delevan Woodruff and J. Herman Woodruff, and by them assigned to the plaintiff in 1883. The improvement covered by the letters patent was useful in the manufacture of buttons from plastic material. This was within the business in which the defendants Woodruff were engaged at the time the patent was issued to them. Their firm name was Woodruff Brothers, and they were in 1883 succeeded in the business by the plaintiff, a corporation then created and organized for that purpose.

The defendant Sylvester claims title to the letters patent by virtue of an assignment made to him in April, 1891, by the defendant E. D. Woodruff, in the name of Woodruff Brothers.

The defendant Sylvester alone defended.

*W. E. & F. E. Hughitt*, for the appellant.

*E. C. Aiken*, for the respondent.

Bradley, J. :

The claim of preference for the assignment made to the defendant Sylvester in April, 1891, over that made to the plaintiff in 1883, is founded upon the fact that the latter had not been recorded, and by force of the statute, which provides that "Every patent or any interest therein shall be assignable in law by an instrument in writing. * * * an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration without notice, unless it is recorded in the Patent Office within three (3) months from the date thereof." (U. S. R. S. § 4898.)

The view taken of the case is such that for the purposes of this review it is necessary to consider no question other than that whether or not the defendant was chargeable with notice of the assignment of the patent to the plaintiff at the time he afterwards took the assignment made to him. He went into the service of the defendants Woodruff in 1877, and continued in their service until in March, 1883, when the plaintiff was incorporated and organized. He then went into its service and continued there until after its leviable property was sold by the sheriff, by virtue of an execution issued upon a judgment against the plaintiff, which sale was prior to April, 1891.

When the plaintiff was organized it became the successor of Woodruff Brothers in the business. They and Paul C. Woodruff were the corporators. The property incident to the business, including the letters patent, was then transferred to the plaintiff. The assignment to it of the patent was by a separate instrument, made March 9, 1883. The defendant Sylvester was advised of the organization of the plaintiff, understood that it was the successor of Woodruff Brothers in the business, and as such he went into its service. He was also cognizant of the fact that the machines, by which use was made of the patent in the business, were in the possession of and used by the plaintiff from the time of its organization.

It seems quite clear from the evidence that the defendant had knowledge of facts sufficient to put him upon inquiry as to the previous transfer of the letters patent by Woodruff Brothers, to whom they were issued.

The evidence on the part of the plaintiff that the defendant was informed by Woodruff of the assignment of them to the plaintiff is

not to be considered upon the question, because it is in conflict with the evidence given by the defendant. He testified that about the time the button company was formed he was asked by J. H. Woodruff to take stock of the company for the note he held, which had been given him by Woodruff Brothers for the patent, and he declined to take the stock ; that about the time of the sale, and which he thinks was on the morning of the day the sale was made by the sheriff of the property of the company, he saw the notice of the sale and then said to Paul C. Woodruff, who was present and the president of the company : " Woodruff, the patents are not in this (notice)," and the latter said " No," and made no further reply ; that he called Woodruff's attention to the fact that the patents were not in the notice of sale because he (defendant) was interested in the patents and " wanted to see where they were going, what was going to be done with them. He made no explanation to me why the patents wasn't in the notice of sale ; none whatever ; I gave him none. I asked him that question simply because I wanted to know whether the patents was going to be sold or not, there ; " that some time after the sale he asked J. H. Woodruff, " Who owns the patent," and that he answered, " I don't know." He further testified that he did not ask him if Woodruff Brothers had assigned the patent to the button company ; " Nothing of the kind ; never asked him that question." He afterwards had an assignment from Woodruff Brothers to himself drawn up, and at his request it was executed by E. D. Woodruff in the name of Woodruff Brothers by him, after inserting in it that the firm of Woodruff Brothers had been dissolved, and that the assignee Sylvester was to save him " harmless from any suit or other liability growing out of this assignment."

He does not state what inquiry he made of E. D. Woodruff on the subject of the title, or that he did or did not receive any information from him about it. His testimony of the interview with him was : " I think I next made inquiry in reference to the title to this patent of E. D. Woodruff ; * * * I said to him I had inquired of J. H. Woodruff about this patent ; had asked him to resign the right to me to use it, and had been unsuccessful ; that he had evaded my questions as to who owned the patent."

By reference to the evidence of J. H. Woodruff it appears that he testified that the defendant came to him and inquired if he could

not get the right to use the patent for himself, and the witness replied, " That that could only be given by the plaintiff."

The defendant had the position of superintendent for the plaintiff while he was in its service, and assisted in working the patent machines. It was quite reasonable for him to suppose that the company was using it pursuant to some right or title derived from Woodruff Brothers, its predecessor in the business, and it appears by the remark made by him when he saw the sheriff's notice of sale that he was apprehensive that the plaintiff had title to the patent or some interest in it. The answer which he says was given by J. H. Woodruff to the inquiry as to who then owned the patent, that he did not know, would seem to have indicated that it was not then owned by Woodruff Brothers, for if it had been, he could not well have said he did not know. The answer would reasonably seem to have led to the further inquiry whether they had assigned it, and to whom, if the inquirer was faithfully in pursuit of information upon the subject.

The notice with which the facts put the defendant upon inquiry, was, that Woodruff Brothers had assigned the patent, and yet it seems that the defendant omitted to make any inquiry to ascertain what the fact was in that respect.

The doctrine applicable to the subject is such that when there is some title or interest in conflict with that which a person is proceeding to purchase, and he has knowledge of facts sufficient to put him upon inquiry as to the existence of such title or interest, he is chargeable with notice of it. In such case the presumption is either that he has made the inquiry and ascertained such prior right, or that he has been guilty of such negligence as to deny to him the character of a *bona fide* purchaser.

The question is, in some sense, one of good faith on his part. He may repel the presumption by showing that he has diligently and duly pursued the inquiry, and been unable to ascertain that any such title or interest in conflict with that which he is seeking to obtain, exists. ( *Williamson* v. *Brown*, 15 N. Y. 354; *Ellis* v. *Horrman*, 90 id. 466.) This the defendant failed to give evidence tending to prove. The fact that Woodruff Brothers had several years before assigned the patent to the plaintiff, was that in respect to which the defendant was, by the circumstances within his knowledge,

put upon inquiry.  And it would seem that if he had in good faith been seeking information in that respect, he would have made an inquiry necessarily calling for it as to that fact.  His omission to do so seems somewhat significant, and, to say the least, was such a want of reasonable diligence as to permit the presumption to remain effectual against him, and to require the conclusion that he was charged with notice of such prior assignment.  As the case as settled represents that it contains all the evidence of the trial " pertinent to questions on this appeal," the record does not permit the inference that any further evidence essential to the question here considered was given on the trial.

For these reasons the judgment should be reversed and a new trial granted, costs to abide the final award of costs.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment appealed from reversed and new trial granted, with costs to abide the final award of costs.