CHARLES E. DICKINSON, Respondent, *v.* MARY A. VANCE, Appellant.

*Covenant in an agreement as to the transfer of certain properties (including a bond and mortgage) by two parties, only one of whom has the title to such bond and mortgage, as to the amount due thereon — liability under such covenant of the party who did not own nor assign the mortgage.*

By a written agreement one Dickinson agreed to convey to Arthur Vance and his wife certain lands and certificates of stock, in consideration of which Vance and his wife agreed to convey to Dickinson certain lands of which they were co-tenants, and also to assign to him a certain bond and mortgage held by Arthur Vance, on which he and his wife covenanted that there was unpaid a certain sum.

After this agreement had been executed by the conveyance of the property and by the transfer of the certificates of stock by Dickinson, and by the conveyance to him by Vance and his wife of the property of which they were co-tenants, and by the transfer by Arthur Vance of the bond and mortgage, it was discovered that the bond and mortgage were subject to a deduction from the amount covenanted to be due thereon by reason of an agreement made between the mortgagors and Arthur Vance by which certain taxes upon the mortgaged premises if paid by the mortgagors were to be treated as a payment to that extent on the said bond and mortgage.

*Held*, that the acceptance by Dickinson of an assignment of the bond and mortgage containing a covenant as to the amount due thereon similar to that contained in the preliminary agreement, which assignment was executed only by Arthur Vance, did not extinguish the covenant entered into by Vance and his wife in reference to the amount due on such bond and mortgage, and that the wife was liable upon the covenant contained in the agreement as to the amount due thereon.

APPEAL by the defendant, Mary A. Vance, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 17th day of November, 1897, upon the decision of the court rendered after a trial at the Niagara Trial Term before the court without a jury.

*Henry M. Hill*, for the appellant.

*David Millar*, for the respondent.

Judgment affirmed, with costs, on the opinion of SPRING, J., delivered at Trial Term.

All concurred.

The following is the opinion of SPRING, J.:

SPRING, J.:

On the 26th day of November, 1892, the plaintiff, as party of the first part, entered into a written agreement with Arthur Vance, now deceased, and his wife, the defendant, whereby said Dickinson agreed to convey to the parties of the second part certain lands owned by him in the city of Buffalo, and to transfer to them certain certificates of stock in the Rochester Candy Works, in consideration whereof the parties of the second part agreed to convey to the plaintiff certain premises on Lake avenue, in Rochester, and also to assign and transfer to him a certain bond and mortgage held by said Arthur Vance, on which it was covenanted there was unpaid the full face value of $14,000 and $700 interest thereon, subject to a deduction of $6,200, erroneously stated in said agreement as $5,200.

This agreement had been drawn and the negotiations preliminary to its preparation had been carried on upon the assumption that the title to the Vance property was in Arthur Vance, when, in truth, the title to the Lake avenue property was in this defendant and her husband, and upon the ascertainment of this fact Mrs. Vance's name was inserted as one of the parties of the second part and the agreement was duly executed by her conjointly with her husband. On the seventeenth day of December following, the agreement between the parties was carried out; that is, the plaintiff conveyed

to the defendant the real estate situate in Buffalo and transferred to her husband the certificates of stock in the candy company, and Mr. and Mrs. Vance executed to Dickinson a conveyance of the Lake avenue property, and her husband assigned to him the Schaeffer mortgage of $14,000, with a covenant as to the amount unpaid thereon tallying with the like stipulation and covenant in the agreement.

It seems that this Schaeffer mortgage had been taken by Vance as part of the purchase price of land conveyed by Vance to the Schaeffers; that when the lands were conveyed there were unpaid tax liens thereon arising from the construction of a sewer, pursuant to the authority of the municipal authorities of the city of Rochester, and that simultaneously with the execution of the conveyance to the Schaeffers and the execution of the mortgage to him, Vance had executed an independent agreement whereby he had agreed to pay these taxes, and further covenanted that in case his grantees paid the same by reason of his failure so to do they might treat the same as payment on said bond and mortgage.

At the time of the delivery of the papers conformably to the Dickinson-Vance agreement these assessments had not been paid. Dickinson, at the time of the making of the preliminary agreement, knew nothing of the unpaid taxes or of the agreement Arthur Vance had made with the Schaeffers, and that agreement had never been recorded. Between that time and the delivery of the conveyance and assignment of the bond and mortgage to him he had been apprised of the true situation of affairs.

Later on the plaintiff commenced a suit for the foreclosure of the Schaeffer mortgage and an issue was raised arising out of the payment of these taxes by the Schaeffers. It seems that the description and designation of the street whereon the sewer was laid and of the ordinance number were improperly stated in the agreement Arthur Vance had made, and the defendants in that suit asked and obtained, apparently without opposition, a reformation of the agreement as to these errors, and also obtained a judgment dismissing the complaint on the ground of the failure of Arthur Vance to pay these assessments, and they were subsequently paid by the plaintiff. Arthur Vance died leaving a will in which his wife, the defendant, was named as executrix, and the plaintiff now sues her as one of the par-

ties to the agreement preceding the execution and delivery of the deeds, etc., to recover the amount paid by him for these taxes.

The facts are substantially undisputed.

While Arthur Vance owned the Schaeffer bond and mortgage there was no separation in the Dickinson agreement of his interests from those of the defendant. She owned the land on Lake avenue jointly with him, but by the agreement two things were undertaken by the Vances. *First,* to convey an indefeasible title to Dickinson of this Lake avenue property. *Second,* to assign to him the Schaeffer bond and mortgage. Dickinson did not look into the relations subsisting between the husband and wife as to the title of the real property, but accepted their joint agreement to vest the title in him. Arthur Vance covenanted to do this as well as his wife, and for a breach of this engagement each would be liable to Dickinson. The same is true as to the Schaeffer mortgage. The Vances jointly agreed and covenanted to assign to him this mortgage, and more than that, they covenanted that there was unpaid a specific sum, subject to a definite reduction. Not only Arthur Vance so covenanted or stipulated, but the defendant did so as well, and they were both liable for the fulfillment of the agreement, and one as well as the other could be held in damages for the breach. There was ample consideration moving to the defendant, thus distinguishing the case from *Mygatt* v. *Coe* (152 N. Y. 457) and kindred cases. She was part owner of the Lake avenue property and conveyed it, and she accepted the conveyance of the Buffalo property. So she was not a party as a matter of form, but she had a property interest and was vested with another valuable interest as the fruits of the agreement she had made. It was not incumbent on Dickinson to separate the burdens assumed by these parties to the agreement. They made no distinction in their agreement. Together they voluntarily undertook to perform, and if the title to part of the property was in one and part in another, they must adjust their rights among themselves.

It is urged that the acceptance of the assignment of the bond and mortgage by Dickinson with knowledge of the agreement Arthur Vance had made with the Schaeffers amounted to a merger of the preliminary executory agreement. The rule is certainly not invariable that the executed agreement merges in it all the covenants of the pre-

ceding executory contract. It depends upon the intention of the parties, and if there is nothing to show it was the design to surrender or extinguish the preceding covenants the presumption is they will remain in force. (*Smith* v. *Holbrook*, 82 N. Y. 562; *Morris* v. *Whitcher*, 20 id. 41; *Disbrow* v. *Harris*, 122 id. 362; *Witbeck* v. *Waine*, 16 id. 532; *Applebee* v. *Duke*, 37 N. Y. St. Repr. 446.)

The plaintiff accepted an assignment of the bond and mortgage in which Vance covenanted there was unpaid the sum of $14,000 and interest as recited in the executory agreement. To vest title in him of this bond and mortgage, the assignment from Arthur Vance was all that was necessary. There was already in force a covenant or stipulation assuring to the plaintiff the unqualified title to this bond and mortgage with no other reduction than that stipulated. The assignment did not contain any statement as to the reduction of $6,200, yet it was not nullified by that instrument or merged in it. So any independent covenant not in hostility to the executed contract is not invalidated by the delivery of the final papers in the consummation of the preceding agreement unless it was apparent that such was the design of the parties. There is no pretense here that the warranty as to the $6,200 was destroyed by this assignment, and there is no circumstance to show that the parties intended the abrogation of the warranty as to the amount generally unpaid on the mortgage. It would not occur to Dickinson to have the defendant join with her husband in the assignment of the bond and mortgage. Title could be transferred without this. The delivery of these papers was essential to the fulfillment of the agreement, but nothing appears indicating that it was the intention of the plaintiff to surrender any of his rights under the agreement. He may have expected Arthur Vance would fulfill his agreement with the Schaeffers and pay the tax liens, but this expectation would be in no wise incompatible with an intention to retain all the rights, necessary to protect himself, which were accorded to him by the contract he had entered into with the Vances. The plaintiff is entitled to judgment for the sums paid by him for these tax liens.