UNION MILLS v. HARDER et al.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

1. INJUNCTION—SCOPE OF RELIEF.

In an action to restrain violation of a contract not to engage in the manufacture of certain articles, or to use the name "Harder Knitting Company," a decree was too broad which restrained defendants from using the name "Harder Manufacturing Company" in a business not included within the contract.

2. CONTRACTS—MERGER—EVIDENCE.

Where an executory contract of sale of a manufacturing plant provided that the sellers should not engage in the manufacture of the same article or use the firm name of the company, they had no right to resume that business unless they were able to show affirmatively that the provision of the contract had been merged in a subsequent agreement, and this was not done by the mere showing that a paper, signed by some of the original contracting parties, was found in the possession of the purchaser to whom the conveyance was subsequently made, or in the possession of its attorneys, agreeing that some of the sellers would not engage in such business for a limited period.

Appeal from Special Term, Columbia County.

Action by the Union Mills against William A. Harder and another. From a judgment for plaintiff, defendants appeal. Modified and affirmed. .

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-LOGG, and COCHRANE, JJ.

Brownell & Tilden (D. Cady Herrick, of counsel), for appellants. Cady & De Lamater, for respondent.

JOHN M. KELLOGG, J. By agreement of October, 1901, the Harder Knitting Company and the five stockholders and directors of said company, the parties of the first part, sold its property and business and the capital stock of said company to one "Holsapple or any person or corporation that he may designate," as parties of the second part, and agreed, among other things, not to engage in the manufacture of shirts or drawers in the county of Columbia, with certain exceptions, or to use the corporate name "Harder Knitting Company." Thereafter Holsapple contracted with Kidder, Peabody & Co. to sell to them said business and property and also the Union Knitting Company and property, and to turn over to said firm, or a corporation formed by it for such purposes, all the property and benefits secured to him by the October agreement. The plaintiff is the corporation formed to succeed to the rights of Kidder, Peabody & Co. and said Holsapple under said October agreement, and upon the day fixed for the conveyance a transfer of the Harder Knitting Company property and business and capital stock was made to the plaintiff and the consideration paid therefor. The October agreement was signed by the defendant Harder, who was the manager and principal stockholder of the knitting company, and by two of the other stockholders. . The two other stockholders did not sign the agreement, but participated in the benefits of it. The evidence fairly shows that the defendant Harder and the de-

fendant corporation, of which he is the principal owner, have violated said agreement, and the evidence fully sustains the judgment in that respect and justifies an injunction against them. So far as the judgment restrains the Harder Manufacturing Company from using that name in any business, it is too broad, as the defendant has the right to use that name in any other business excepting the manufacture of shirts and drawers. The judgment should, therefore, be modified in that respect.

The principal question requiring further consideration arises upon defendant's Exhibit A, which bears date November 14th, the same date the deed and bill of sale bear. The deed, bill of sale, and stock were delivered and the money paid November 15th, the day fixed by the October agreement. Exhibit A is a unilateral agreement, signed by the defendant Harder, and Pitcher and Johnson, three of the parties to the October agreement, and they agree with the plaintiff, among other things, not to manufacture shirts or drawers in said county, with certain exceptions, for the space of six years; also that they will not use the name "Harder Knitting Company"; also that they will protect the plaintiff from all liens or liabilities against the knitting company. By special finding upon the trial the court, while refusing to find that this agreement was executed and delivered to the plaintiff as a part of the transaction when the conveyances and transfers and payments were made, found that the paper was prepared by representatives of the plaintiff, the blank spaces in which the six years and other provisions occur were filled in by the partner of Mr. Holsapple, who is an attorney, and that the paper was retained by the plaintiff and produced by it upon the trial and introduced in evidence by the defendant. It is claimed that this finding really shows that Exhibit A was executed and delivered at the time the transfers were made, became a part of the transaction, and merged the provision in the October agreement, by which the defendants were restrained from carrying on that business at any time, and limited the restraint to a period of six years. The October agreement did contemplate that at the time of the conveyance a separate agreement should be signed by the five stockholders protecting the purchaser from all claims and liabilities against the knitting company. By the terms of the October agreement, the provision therein by which the defendants were not to engage in that business was to survive the execution of the transfers, and was intended to continue indefinitely. There were, in addition, several other provisions in the original agreement which were also to continue and survive the transfers of title. It did not contemplate that any other terms were to be in the separate agreement guarantying against liability. The October agreement was apparently to fix the rights of the parties in all other respects.

One Vance and wife traded lands with one Dickinson, and in the exchange were to transfer to him a bond and mortgage held by Vance upon which he and his wife covenanted the amount unpaid. When the deeds were excuted, an assignment was delivered signed by Vance, in which he guarantied the amount due on the mortgage. Thereafter it turned out that there was not that amount due, and it was held that

the original agreement was not merged, but remained in force; the court saying:

"It is urged that the acceptance of the assignment of the bond and mortgage by Dickinson with knowledge \* \* \* amounted to a merger of the preliminary executory agreement. The rule is certainly not invariable that the executed agreement merges in it all the covenants of the preceding executory contract. It depends upon the intention of the parties, and, if there is nothing to show it was the design to surrender or extinguish the preceding covenants, the presumption is they will remain in force." Dickinson v. Vance, 31 App. Div. 464, 467, 53 N. Y. Supp. 619.

The view that it is purely a matter of intention whether the provisions in the executory agreement remain in force, and that the burden rests upon the party so claiming, is sustained by Schoonmaker v. Hoyt, 148 N. Y. 425, 429, 42 N. E. 1059, and Disbrow v. Harris, 122 N. Y. 362, 365, 25 N. E. 356.

There was no evidence before the court explaining Exhibit A, or accounting for its existence, except that recited in the special finding, and that finding, read with the evidence, does not destroy the effect of the refusal to find that the paper was not executed and delivered at the time as a contract. When the transaction was closed we have the four contracting parties, each of whom apparently had interests to protect as against the others, viz., the Harder Knitting Company and its stockholders; Mr. Holsapple, the purchaser from that company; Kidder, Peabody & Co., the purchaser from Mr. Holsapple; and the plaintiff, the purchaser from Kidder, Peabody & Co. Mr. Holsapple was the only person participating in that transaction who was sworn as a witness concerning Exhibit A. He thought it must have been prepared by the Boston attorneys for Kidder, Peabody & Co. for the reason that it was apparently not written on the typewriter in his office. He swears he never saw it or heard of it at the time, nor until a long time afterwards, and about the time this action was brought. He is the manager of the plaintiff corporation, and by the agreement transferring his interest in the October agreement to Kidder, Peabody & Co., he agrees to enter the service of the company and devote his time to its interests. After the transaction was closed the Boston attorneys became and now are the attorneys for the plaintiff. This paper afterwards was sent by the Boston attorneys to the local attorney, with the other papers belonging to the plaintiff referring to this case. There is nothing to show when the blanks were filled in when the paper was received by the plaintiff, if at all, or that the plaintiffs ever accepted it as a contract. There is an entire absence of evidence tending to show for what purpose the paper was executed, or when or how it came into the plaintiff's possession. By the October contract the defendants had deprived themselves of the right to engage further in the manufacture of shirts and drawers in that county, except as stated therein, and they have not the right to resume that business unless in some way they show affirmatively that that provision of the contract has been destroyed. The mere showing that a paper signed by some of the contracting parties is found in the possession of one of the other contracting parties, or its attorneys, does not show an intention to abrogate the first agreement. There is noth-

ing in the terms of the second paper tending to indicate that it was intended to destroy the first. By the original agreement all the five stockholders were not to engage in such business at any time. While two of the stockholders did not sign the agreement, they had the benefit of it and apparently ratified its terms. At least the agreement stands as an agreement of the three assuring the plaintiff that no one of the five will engage in such business. Exhibit A purports to agree only that three of the parties will refrain from the business, and for a period of six years only. It cannot be assumed that such limited agreement, signed by three parties, was intended and understood to merge and destroy the agreement that none of the five parties should engage in such business at any time. The defendant has failed to establish any change of the original agreement with respect to the time of the limitation. If there was any understanding, or any circumstances which would tend to show that the original agreement was abrogated, it was the duty of the defendant to produce the evidence and explain the circumstances and the purpose for which Exhibit A was executed, and the time and the manner of its execution, delivery, and acceptance.

The judgment should be modified by striking therefrom the provision restraining the defendant corporation from using its corporate name in any business, and, as so modified, affirmed, without costs. All concur; COCHRANE, J., not voting.