Manuel Joseph Brazill, Plaintiff, *v.* Margaret Weed and Frederick A. Southworth, Individually and as Executors of and Trustees under the Last Will and Testament of Thomas M. Weed, Deceased; Lila Morrison Weed; Margaret Thomas Weed; and Elizabeth Clark, as Administratrix of the Goods, Chattels and Credits that were of Thomas M. Weed, Deceased, Defendants.

(Supreme Court, New York Special Term, May, 1921.)

Real property — who is not a bona fide purchaser for value without notice — wills — vacating probate — posthumous child — damages.

> After the executors under the will of a testator who died survived by his widow, an infant daughter and an unborn child, had conveyed certain real estate of their testator, the surrogate, upon vacating and setting aside the decree of probate on the ground that the daughter had not been legally represented by special guardian and that the posthumous child was not bound by said decree, opened the probate proceeding with leave to the daughter to file objections. No steps having been taken to reprobate the will, letters of administration were duly issued. In an action to remove an alleged. cloud upon the title of the premises it appeared that, prior to taking title, plaintiff saw the posthumous child but claimed that he closed the transaction, throughout which he was not represented by an attorney, upon the assurance of the executors that they would reprobate the will, which claim was supported by the testimony of one of the executors, the lawyer who drew the will. *Held,* that in the circumstances plaintiff was not a *bona fide* purchaser for value without notice.

> That in the absence of proof of the existence of a valid will at the time of the conveyance, of which plaintiff made no offer of proof, he was only entitled to a return of the consideration paid by him, the cancellation of the bond and mortgage given in part payment of the purchase price, and $100 for liquidated damages, besides any sum paid by him for taxes on the property, as well as installments paid on account of the principal

of the mortgage and interest payments, together with interest on said several amounts less the rental value of the property — seventy-five dollars per month — during the time of his occupancy.

That the sums so payable to plaintiff be decreed to be liens upon the property in question, and that it may be sold to pay the same.

ACTION to remove cloud on title.

Harold Swain (Edwin W. Cady, of counsel), for plaintiff.

Gustav Lange, Jr., for defendants Lila M. Weed, Margaret T. Weed and Elizabeth Clark.

William R. Brinckerhoff, for defendant Frederick A. Southworth.

LYDON, J. This action was brought to remove an alleged cloud upon title, involving the premises No. 464 West One Hundred and Forty-fifth street, in the borough of Manhattan, city of New York. Plaintiff claims ownership thereof by purchase from the defendants Margaret Weed and Frederick A. South-worth, as alleged executors of and trustees under the alleged last will and testament of Thomas M. Weed, deceased. The infant defendants Lila Morrison Weed and Margaret Thomas Weed claim ownership thereof as children and heirs at law of said Thomas M. Weed, deceased. The action was commenced after an action in ejectment had been instituted on behalf of said infant defendants against the plaintiff. After issue was joined in the present action, an order was entered directing a separate trial of the equitable issues prior to the trial of the issues of law raised by the counter-claim of the infant defendants, to wit, ejectment. The testimony shows that Thomas M. Weed, who was a

practicing dentist, died on January 28, 1918, leaving him surviving his widow, Margaret Weed, and a daughter, Lila Morrison Weed, who was born February 5, 1916, and an unborn child who was born on September 11, 1918, and was named Margaret Thomas Weed. Said decedent also left him surviving his mother, Eliza P. Weed. On November 3, 1915, Dr. Weed made his last will and testament at the office of his attorney, Frederick A. Southworth. The will was left in the possession of Mr. Southworth, but a copy thereof was sent to Dr. Weed on or about November 11, 1915. This copy, after Dr. Weed's death, was found in a safe in the doctor's office. On this copy was written in Dr. Weed's handwriting the words " Copy of Will, November, 1915. Original F. A. Southworth, 68 William St." The original will was retained in Mr. Southworth's office until the last of July, 1917, when said original will was sent to Dr. Weed. Dr. Weed died January 28, 1918. On February second, two days after the funeral, the widow Margaret Weed, decedent's mother, Eliza P. Weed, his sister, Margorie Ean, and her husband, Alfred Ean, made a search for the combination of the safe in Dr. Weed's office, and while so doing, the will was found by Margaret Weed, the widow, who produced it from the drawer of the desk. Mr. Southworth arrived a few minutes later. The will as found was mutilated in that the last page had been torn, so that the instrument bore no signature of the testator, no attestation clause and no signatures of any witnesses. After numerous conferences between the members of the family and Mr. Southworth and numerous counsel it was decided to offer the said mutilated will for probate. Thereupon, and on or about March 19, 1918, the widow, Margaret Weed, together with Mr. Southworth, executed a petition for the probate of said will

and filed the same in the Surrogates' Court, New York county. On said probate the infant, Lila Morrison Weed, was cited. In the petition it was alleged, among other things, as follows: "Your petitioners have been informed and verily believe that during the lifetime of said testator he mutilated a part or portion of the paper upon which his last will and testament, herein sought to be probated, was written. That said mutilation was not the act of the said testator while he was of sound and disposing mind, but was committed at a time and under circumstances which your petitioners are informed and believe rendered said act null and void at law by reason of the mental incapacity of the said testator at the time when said mutilation occurred." The unborn child was also specifically mentioned in said petition. Necessarily, no citation was or could be served upon the unborn child. As to the infant Lila Morrison Weed, Warren Leslie purported to appear for her as special guardian on the hearing for the probate on April 5, 1918, but he had not been appointed special guardian at that time, his appointment having been made subsequently and on May 6, 1918. The report which was filed by said Warren Leslie, as such special guardian, was not verified by him and he does not certify therein that he examined the testimony of the witnesses except the testimony of the subscribing witnesses. Thereafter and on the 5th day of June, 1918, a decree was made by Surrogate Fowler admitting to probate the aforesaid paper writing, with the missing parts supplied, as the last will and testament of the said Thomas M. Weed, deceased, valid to pass real and personal property, and directing that letters testamentary issue to the executrix and executor named therein, who may qualify thereunder. Obviously the probate of this will was not binding on the unborn child. Prior to

the probate of the will it appears that the widow, Margaret Weed, caused an advertisement to be inserted in a dental publication on March 18, 1918, offering for sale the premises in question, together with the dental practice of Dr. Weed. In response to this advertisement a real estate broker, G. Walker Campbell, negotiated for the purchase of the property, as advertised, for a client who, in fact, was the plaintiff, but whose identity was not then revealed. Finally, on August 20, 1918, the executors entered into a written contract with the plaintiff for the sale of the premises, including the dental equipment, for the sum of $11,875, to be paid as follows: $1,000 on the signing of the contract, $2,875 in cash on the delivery of the deed and $8,000 by the purchaser giving back a purchase money mortgage for that amount on the premises, which was to run for a period of three years, with interest at five per cent per annum, payable semi-annually, and to contain a provision for the payment of semi-annual installments of $250 on account of the principal until the mortgage debt was reduced to $7,000. The contract likewise provided: " It is further understood and agreed that in case the vendors are unable to complete this contract and to deliver to the vendee or his assigns a marketable title to the premises herein described they shall be released from all liability upon vendors' return to the vendee the sum of one thousand dollars ($1,000) paid on the signing of this contract, together with counsel fees and title insurance expenses not to exceed one hundred dollars ($100), same to be paid as liquidated damages." Title was passed and the deed delivered to plaintiff under this contract on October 28, 1918, and he paid the money and duly executed and delivered the bond and mortgage as called for by the contract. The plaintiff claims that he closed the

transaction upon the assurance of the defendants Margaret Weed and Frederick A. Southworth that they would thereafter reprobate the said will of Thomas M. Weed, deceased, as to the posthumous child, and in this assertion he is supported by the testimony of Frederick A. Southworth. The plaintiff throughout the transaction was not represented by an attorney and apparently absolutely relied upon the good faith of the parties he was dealing with. He purchased this property from the trustees under a will which purported to have received the sanction of the probate court. But at the same time he knew of the posthumous child before her birth, and then he knew of the birth of the child on September 11, 1918, and actually saw her prior to taking title. Notwithstanding the fact that he was then in a position to require the reprobate of the will, which if duly reprobated would have perfected his title, he made no such demand. He merely relied upon the promises of the trustees to reprobate the will at some future time. After the closing of title the defendant Margaret Weed changed her residence to Massachusetts, and shortly thereafter on December 5, 1918, the defendant Mr. Southworth wrote her inclosing a petition for the reprobate of the will and requesting her to execute same and return it to him. To this letter she subsequently replied by refusing through her new attorney to sign, and Mr. Southworth was requested not to take any steps in the matter. No steps were thereafter taken by any one to reprobate the said alleged will, and thereafter no final adjudication on the merits as to the validity of said alleged last will and testament of said Thomas M. Weed, deceased, has been had. Subsequently, and on or about February 3, 1919, separate applications were made on behalf of the widow and each of the children of said Thomas M. Weed, deceased, for orders vacating the said decree

of June 5, 1918, admitting said alleged will to probate. Surrogate Fowler, who had formerly granted the decree of probate, heard the application and wrote an opinion holding that the infant Lila Morrison Weed was not legally represented by a special guardian at the time of the application for probate, and as to the posthumous child she was not bound by the probate of the will, and thereupon made an order vacating and setting aside the probate and revoking the letters testamentary granted to Margaret Weed and Frederick A. Southworth, and opening the proceedings for the probate, with permission to the said Lila Morrison Weed to file objections to said petition for said probate. Apparently no steps were taken thereafter to probate the will, but on July 12, 1919, on a petition duly filed in the Surrogates' Court, letters of administration were duly issued to the defendant Elizabeth Clark as administratrix of the goods, chattels and credits which were the said Thomas M. Weed, deceased, and said Elizabeth Clark duly qualified and is acting as such administratrix, and she now has possession of the personal estate of said decedent other than the amounts of money paid to defendant Southworth by the plaintiff on the purchase of the premises in question and the bond and mortgage. Thus we find that Thomas M. Weed has been declared to have died intestate, and the probate of the alleged will under which the defendants Margaret Weed and Frederick Southworth purported as trustees to sell the premises in question has been set aside. Notwithstanding the revocation of the probate by the surrogate, the plaintiff's claim could be sustained if a valid will has been proven giving power to these trustees to make this conveyance. The plaintiff has offered no proof in this action as to the validity of the will other than to put in evidence the records of the Surrogates'

Court, and he claims that the revocation of the letters testamentary can have no effect upon the validity of the acts of the executors in this conveyance to him of the real property in question under the power of sale in the will. In this contention he relies on section 2555 of the Code of Civil Procedure, which provides in part as follows: " The revocation does not affect the validity of any act, within the powers conferred by law upon an executor, administrator, or guardian, done by him before the service of the citation, where the other party acted in good faith; * * *." The plaintiff, however, does not seem to be in the position of a person who may be said to have acted in good faith, for he had knowledge, both actual and constructive, of the defect in the title, and relied upon the promises of the executors to reprobate the will. With that knowledge he deliberately took title and paid over his money and obligated himself on the bond and mortgage without first insisting on the reprobate proceeding, as the posthumous child had prior to that time been born. He certainly was not, therefore, a *bona fide* purchaser for value without notice. *Williamson* v. *Brown,* 15 N. Y. 354; *Sweet* v. *Henry,* 175 id. 268. In *Williamson* v. *Brown, supra,* it was held (at p. 362) : " Where a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a *bona fide* purchaser." On the trial it was shown that the will when found was in a mutilated condition, and that as a mutilated will it was offered for probate, and that thereafter it was admitted to probate and letters testamentary were issued to the defendants Margaret Weed and

Frederick A. Southworth as executors, but there was no proof offered to show the means or circumstances under which the mutilation occurred. There is an allegation in the petition for probate to the effect that the decedent mutilated the will while he was not of sound and disposing mind and that said act was therefore void. But there is no evidence in this case to show that proof of any such facts was produced before the surrogate, and no proof of that kind was offered on the trial of this action. It would follow, therefore, that there is a presumption that the mutilation was done by the decedent *animo revocandi. Matter of Hopkins,* 172 N. Y. 360. The burden of proof was on the plaintiff to establish that the alleged will relied upon by him was the valid last will and testament of the decedent and that it had not been revoked, but that it was still in existence at the time of decedent's death. There was considerable testimony offered on the trial to show that the desk in which the mutilated will had been found was in the decedent's office and that numerous people had access to the office; furthermore, that "within thirty seconds" after the death of decedent the widow, Margaret Weed, "dashed" downstairs to the office; also that the widow stated to her mother-in-law "that she had to laugh to herself when she talked to Fred (meaning Mr. Southworth); that Fred hung around thinking he was going to get a good fee for being executor of Tom's will and there was no will." Presumably this evidence was offered to indicate that the widow had something to do with the mutilation of the will, but it is sufficient to point out that the same witnesses testified that on February 2, 1918, a few days after, when the will was found, the widow told Mr. Southworth that she wanted the will probated if possible. Therefore no proof whatever has been offered as to the mutilation of the will

by any specific person, and as the will was found in the decedent's desk in a folder of the Bankers Trust Company containing suggestions as to the making of wills every presumption points to the fact that the will was mutilated and therefore revoked by the decedent. As to the allegation in the petition on probate that the decedent mutilated the will while insane, that does not square with the testimony of the plaintiff's witnesses on the trial, which showed that the decedent was in full possession of his mental faculties down to the time of his last illness; that on his return from the hospital in the early part of January, 1918, he paid for the taxi, and thereafter, in discussing the photographs which had been taken of his daughter, he wrote out a list of names of persons to whom he desired copies to be given; that he also discussed with his broker different stocks and expressed his opinions on the investments. What evidence, if any, was offered in the Surrogates' Court on which the decree of probate was granted is not revealed by the testimony in this case, but the decree was set aside by the surrogate, first, because the infant, Lila Morrison Weed, was not legally represented, and, secondly, because of the lack of jurisdiction as to the unborn child. That was followed by the issuance to Elizabeth Clark of letters of administration, which would seem to establish that the decedent died intestate. In the contract of sale entered into by the plaintiff and the executors there was a clause providing for the return to the plaintiff of the first payment and also $100 additional as liquidated damages in the event that the executors were unable to complete the contract and to deliver to the plaintiff or his assigns a marketable title, and upon such payments the executors were to be released from all liability. It is true that the executors did

deliver a deed under the contract, but at that time the same defects of title existed as were present at the time that the contract of sale was made. There can be no presumption of intention on the part of the executors to give up the beneficial provisions in the contract releasing them from liability if they failed to convey a marketable title in the absence of evidence of that intention. *Morris* v. *Whitcher*, 20 N. Y. 41. The rule is certainly not invariable that the executed agreement merged in it all the covenants of the preceding executory contract. It depends upon the intentions of the parties, and if there is nothing to show it was the design to surrender or extinguish the preceding covenants the presumption is they will remain in force. *Dickinson* v. *Vance*, 31 App. Div. 464; *Brunswick Const. Co.* v. *Burden*, 116 id. 468. At the close of the trial counsel for the defendants other than the defendant Southworth moved to dismiss the complaint on numerous grounds, and counsel for defendant Southworth joined in the same. During the trial the counsel for the defendants other than the defendant Southworth consented to the return to plaintiff of all moneys paid out by him for the purchase of the premises in question, as well as cancellation of the bond and mortgage, and the defendant Southworth testified that he had no objection to doing likewise. It would seem, therefore, that in the absence of proof of the existence of a valid will at the time of the conveyance that the plaintiff is only entitled to the return of the consideration paid by him, the cancellation of the bond and mortgage executed by him and $100 for liquidated damages, besides any sums paid by him for taxes on the property, as well as installments paid on account of the principal of the mortgage, and interest payments, together with interest on said several amounts, less the rental

value of the property during the time of his occupancy. Said rental value is fixed at seventy-five dollars per month, with interest. That said sums so payable to the plaintiff shall be decreed to be liens upon the real property in question, and that said real property may be sold to pay the same.

Ordered accordingly.