HANNAH YAGER, Plaintiff, *v.* RUBYMAR CORPORATION et al., Defendants.

Supreme Court, Trial Term, Kings County, June 27, 1962.

518

*Max J. Le Boyer* for plaintiff. *Stanley D. Friedman* for Benjamin Margolis, defendant.

Louis B. Heller, J. This is an action brought to recover a deficiency arising on a bond after foreclosure of a mortgage, given to secure the same, covering real property in the State of New Jersey. The undisputed and established facts, so far as pertinent to an understanding of the issues and a determination of the instant case, are as follows: The defendant Rubymar Corporation, a New York corporation, having its principal place of business in this State, which has defaulted in appearing or answering in this action, did, on November 15, 1950, in Newark, New Jersey, execute and deliver to plaintiff its bond and mortgage conditioned for the payment of an indebtedness of $15,000, maturing, according to the terms thereof, on November 15, 1953.

This mortgage, covering realty which is situated in the City of Newark, was subject and subordinate to a prior first mortgage of $75,000, covering said property, executed by Rubymar to Bernard Winfield and Caroline Winfield. In 1952 the defendant Margolis, together with Philip M. Ungar and Bernard Ungar who, although named as defendants, were not served with process in this action, became owners of the mortgaged premises afore-mentioned; and, on December 31, 1953, the plaintiff, as holder of the bond and mortgage, executed a written agreement with the defendant Margolis and the Ungars wherein and whereby the time for payment of the unpaid balance of the mortgage debt was extended to November 15, 1955. This agreement contained a provision that the said owners "hereby covenant to pay" the unpaid balance of the principal which would be owing to the plaintiff on the aforesaid date of maturity of the mortgage debt fixed in the agreement. Thereafter by letter agreement dated November 14, 1955, the due date for payment of the mortgage debt was further extended to November 15, 1958, and subsequently by similar letter agreement dated December 10, 1958, a further extension was granted to November 15, 1961. Neither of the latter two agreements contained any covenant by the owners, namely, defendants Margolis and the Ungars, to pay the principal balance owing upon the expiration dates fixed in said agreements. On June 26, 1959, the afore-mentioned Winfields, as owners and holders of the first mortgage covering the subject property, instituted in the Superior Court of the State of New Jersey an action to foreclose said first mortgage by reason of a default in the payment of installments of principal and interest due thereunder. Included as party defendants to said foreclosure action were Rubymar Corporation as mortgagor under the first mortgage, the defendant Margolis, and the Ungars. The instant plaintiff who, as a subsequent encumbrancer, was also made a party defendant in that action, interposed an answer which contained a crossclaim against her codefendants. Said crossclaim alleged a default in payment of the installments of interest and principal provided for in her mortgage and the extension agreements, and by reason thereof demanded a judgment of foreclosure against her codefendants fixing the amount due on said mortgage. The defendant Margolis, and the Ungars, appeared in said action, interposing an answer to the complaint of the Winfields, but defaulted in answering or replying to the crossclaim of the instant plaintiff although served with copies thereof. On April 27, 1960, a judgment of foreclosure, after trial, was entered in favor of the Winfields and the plaintiff herein, adjudging that there was due

to the Winfields the sum of $54,705.07 with interest thereon, and to the present plaintiff the sum of $7,162.43 with interest thereon, and directing that the mortgaged premises be sold at a public sale to satisfy the several sums of money found to be due to said parties as hereinabove stated. Thereafter at a public sale of the subject premises held pursuant to the judgment of foreclosure, the property was sold to Max S. Seidler, a brother of the plaintiff herein, for $64,000. The sum of $1,845.07, representing the balance of the proceeds of the sale remaining after payment of the amount due to the Winfields and payment of the expenses of the foreclosure sale, was paid to the plaintiff herein, resulting in a deficiency on the mortgage indebtedness to plaintiff of $6,044.17, which is the sum sought to be recovered in this action.

Plaintiff's instant action as against the defendant Margolis is based upon the bond executed and delivered to plaintiff by Rubymar Corporation as augmented by the extension agreement of December 31, 1953, containing defendant's covenant to pay (*Yager* v. *Rubymar Corp.*, 34 Misc 2d 704). It is the plaintiff's contention that the covenant of the defendant Margolis, as well as that of the Ungars, contained in the afore-mentioned extension agreement, to pay the unpaid principal of the mortgage due on the expiration date thereof, constituted an assumption of the mortgage debt rendering the defendant Margolis, as well as the Ungars, personally liable for the debt secured by the mortgage.

The defendant Margolis (hereinafter referred to as " defendant ") charges a failure on the part of plaintiff to allege in her complaint due performance of conditions precedent on her part to be performed (Rules Civ. Prac., rule 92) and an absence of any offer, in said pleading, to credit upon the alleged mortgage indebtedness the specified fair market value of the mortgaged premises as of the date of the sale in the foreclosure suit, as required by New Jersey statute (New Jersey Stat. Ann., § 2A:50–22). In addition, defendant has raised a multifold challenge directed to the validity and enforcibility of the agreement of December 31, 1953, insofar as it is sought to be relied upon by plaintiff as imposing upon the defendant a subsisting personal obligation to pay the mortgage debt. In this connection the defendant contends that the covenant to pay contained in the afore-mentioned agreement did not amount to an agreement to assume the mortgage debt; that the agreement insofar as it purports to constitute an assumption of the mortgage debt is invalid and unenforcible since it does not satisfy the require-

ments laid down in section 1083-c of the Civil Practice Act dealing with agreements for the assumption of mortgage debts by grantees of mortgaged premises; that in any event the agreement of December 31, 1953 was superseded by the subsequent extension agreements, resulting in the extinguishment of such obligation to pay the mortgage debt as may have been incurred by the defendant under the 1953 agreement. Finally, with respect to the agreement of December 31, 1953, as well as the subsequent agreements, it is defendant's contention, as is pleaded in his amended answer by way of counterclaim as well as defense, that the said agreements are void and unenforcible because Max S. Seidler, acting as attorney for his sister, the plaintiff herein, demanded and received on her behalf in this State usurious bonuses as consideration therefor, namely, the sum of $1,265.03 for the agreement of December 31, 1953; $1,635.22 for the agreement executed November 15, 1955; and $1,158.76 for the agreement executed on December 10, 1958.

Other issues which have been litigated upon the trial of this action involve the following: (1) the defendant's claim that although the mortgaged premises were bid in by Seidler at the foreclosure sale he was actually acting on behalf of the plaintiff in making the purchase; that the market value of said premises was in excess of the mortgage indebtedness; and that therefore, the plaintiff, as the real purchaser of the mortgaged premises, was required under the applicable New Jersey statute to credit upon the indebtedness the fair market value of the mortgaged premises as of the date of sale (New Jersey Stat. Ann., § 2A:50–22); and (2) the defendant's contention that certain items were included in arriving at the amount demanded in the complaint which were not proper foreclosure charges as provided for in section 1087 of the Civil Practice Act.

Addressing myself first to the preliminary challenges, directed to the sufficiency of the complaint herein, raised by defendant's claim that plaintiff has failed to allege due performance as provided for in rule 92 of the Rules of Civil Practice, and has not offered to credit the fair market value of the subject premises, I find that these objections are not well founded. Due performance of conditions precedent need not be alleged in the general conclusory terms permitted by rule 92 where the facts constituting due performance of conditions precedent, if any, appear on the face of the complaint (*Rush* v. *Rich, Inc.*, 12 Misc 2d 28). The condition precedent to enforcibility of the covenant to pay the mortgage debt in the instant case was satisfied by the extension of time granted by the plaintiff for the payment of said debt. Compliance with this condition on the part of plaintiff, although

not expressly averred in the complaint, is necessarily implied from the allegations thereof. As regards the absence from the complaint of any offer to credit fair market value, the controlling New Jersey statute is clear that the requirement applies only where the plaintiff seeking to enforce the assumption agreement was himself the purchaser of the mortgaged premises upon the foreclosure sale (New Jersey Stat. Ann., § 2A:50–22; cf. *Yager* v. *Rubymar Corp.*, 34 Misc 2d 704). Since, as is hereinbelow held, there has been a failure to establish that the instant plaintiff was the purchaser in fact, the foregoing requirement is not applicable.

Turning next to the questions raised by the defendant with respect to the validity and enforcibility of the defendant's " covenant to pay " the mortgage debt, as contained in the extension agreement of December 31, 1953, I reach the conclusion that the defendant's objections cannot prevail. Having concluded that, for reasons hereinafter discussed, section 1083-c of the Civil Practice Act is not applicable to, and does not control, the validity and enforcibility of the agreement of December 31, 1953 as an assumption agreement, I am of the opinion that defendant's " covenant to pay " contained in said agreement evidences an assumption of the mortgage debt by the defendant rendering him personally obligated for the payment thereof. Both under the New York Statute (Civ. Prac. Act, § 1083-c) and under the New York law as it prevails with respect to those cases falling outside the statute as in the instant case, a grantee may by agreement assume a mortgage indebtedness as consideration for and as part of an agreement granting an extension of time to pay the mortgage (see *Silverstein* v. *Brown*, 153 App. Div. 677; *McGee* v. *Friedman*, 138 Misc. 817; 15 Carmody-Wait, New York Practice, § 385, p. 539). While an agreement, in order to constitute a contract of assumption of a mortgage debt by a grantee of the mortgaged premises, must clearly import an intent to assume payment of the debt, it is not necessary, in the absence of any controlling statute to the contrary, that the word " assume " be used for the establishment of such intent. A grantee's covenant to pay the mortgage debt is deemed sufficient to manifest, in the absence of language or acts indicating the contrary, an intention to incur a personal obligation to pay the mortgage debt. (See 37 Am. Jur., Mortgages, § 997; Ann., 10 A L R 891.) If it had been the intention of the individual parties herein that the agreement entered into by them was one simply to extend time of payment of the mortgage debt without any assumption of the debt by the defendants, the defendant's covenant to pay the debt would constitute an unnecessary

provision, since such a covenant would not have been necessary for the preservation of plaintiff's existent rights under her mortgage. Hence, it is clear that the " covenant to pay " contained in the agreement was intended to create a personal obligation on the part of the defendants for the payment of the indebtedness (cf. *Schley* v. *Fryer,* 100 N. Y. 71).

If, as defendant contends, section 1083-c of the Civil Practice Act specifying the requirements for a valid agreement of assumption by a grantee of mortgaged premises, is applicable and controlling in the instant case, then it may well be that the first extension agreement, containing the covenant here involved, is inoperative and unenforcible as a valid assumption agreement since it was not accomplished with all of the written formalities required by the afore-mentioned section. Section 1083-c, so far as pertinent, requires that the assumption of the mortgage debt by a grantee, upon an extension or modification of the indebtedness secured by the mortgage, must be in writing, executed and acknowledged by the grantee and must state that said grantee assumes and agrees to pay the mortgage debt. The extension agreement here involved did not in express terms state that the defendant " assumed and agreed " to pay the debt. Moreover, said agreement, although executed, was not acknowledged as required by section 1083-c. However, I conclude that this statute is not applicable, and hence does not control the effect to be given to the agreement of December 31, 1953 as an agreement to assume the mortgage debt, since the property affected by the mortgage is located outside the State of New York, namely, in New Jersey. As noted by Mr. Justice MARTUSCELLO in his decision denying the opposing motions for summary judgment in this case (*Yager* v. *Rubymar Corp.,* 34 Misc 2d 704, 711), " Section 1083 of the Civil Practice Act, which deals with deficiency proceedings, has application to foreclosure actions involving mortgages covering property in this state and not to foreign mortgages " (citing *Provident Sav. Bank & Trust Co.* v. *Steinmetz,* 270 N. Y. 129; *Florida Land Holding Corp.* v. *Burke,* 135 Misc. 341). While it is true that the foregoing statement of rule was made in disposing of that affirmative defense raised in defendant's amended answer alleging, in part, that the instant action was prematurely brought, it must nonetheless be deemed to have valid application also to the provisions of section 1083-c which, like section 1083, is subsumed under article 65 of the Civil Practice Act entitled " Action to Foreclose A Mortgage " and hence forms a part of the pattern of statutory law sometimes referred to as the emergency mortgage laws. Thus, in the

*Provident Sav. Bank & Trust Co.* case (*supra*) the Court of Appeals in holding that the provisions of section 1083-b of the Civil Practice Act, providing for an offset of the value of the real property in actions brought upon an indebtedness secured by a mortgage covering such property, had no application to actions on an indebtedness which is secured by a mortgage upon property located outside this state, indicated as a basis for its conclusion that, since only local mortgages may be foreclosed in this State and since section 1083-b had been grouped among the statutes regulating mortgage foreclosures, the Legislature must be regarded as thereby intending to restrict the right of offset to mortgagors of property located in this state. (See generally Bailey & Rice, The Extra Territorial Effect of the New York Mortgage Moratorium [1935], 20 Corn. L. Q. 315.) The refusal of the courts of this State to apply the New York statutes regulating the recovery of a deficiency judgment, to any indebtedness secured by a foreign mortgage, has been ascribed to a legislative intent to benefit only the holders of land situated in this State (see *Porte* v. *Polachek,* 150 Misc. 891, 894; *Harris* v. *Metropolitan Cas. Ins. Co. of N. Y.,* 156 Misc. 692; *Franklin Soc. for Home Bldg. & Sav.* v. *Weseman,* 162 Misc. 109, 111; Note [1938], 38 Col. L. Rev. 1049, 1055). Section 1083-c, which was enacted in 1938 was intended as a protection to a grantee of mortgaged premises who might otherwise be subjected to liability for a deficiency judgment upon a foreclosure action when in fact he had no intention of becoming personally liable on the mortgage indebtedness as such grantee (see N. Y. Legis. Doc. [1953], No. 65[P], p. 583, Study entitled " The Assumption of a Mortgage Indebtedness by a Grantee of the Mortgaged Premises," § III, p. 13 [p. 595] " The Need for Section 1083-c "). Hence, the logical presumption, on the basis of reasoning analogous to that applied by our courts in the construction of section 1083 generally, is that the protection afforded by section 1083-c was intended by the Legislature to apply only to owners of land situated in the State of New York.

The conclusion at which I have arrived, namely, that the provisions of section 1083-c of the Civil Practice Act do not apply to, and do not affect the validity and enforceability of, the covenant to pay contained in the agreement of December 31, 1953, is the only result which can be reached consistent with the decision previously rendered by Mr. Justice MARTUSCELLO denying defendant's motion for summary judgment; for, since the aforementioned agreement of 1953 on which plaintiff relies did not satisfy all the requirements of section 1083-c, as I have hereinbefore indicated, and would therefore not constitute a valid and

enforcible assumption agreement, summary judgment in favor of defendant would necessarily have had to follow if said statute were applicable.

Another facet of the attack upon the subsisting validity and enforcibility of the 1953 agreement containing defendant's covenant to pay is the defendant's claim that the third and last extension agreement, namely that executed on December 10, 1958, which contained no express covenant on defendant's part to pay the mortgage debt, superseded both previous written agreements between the instant parties, and extinguished any personal obligation to pay which might have been created by the 1953 agreement. The issue posed by this contention is, to state it in other terms, an issue as to whether the first agreement, executed in 1953, was superseded either by the extension agreement executed in 1955 or the last extension agreement, executed in 1958, or by both, as regards the covenant to pay contained in the first of the afore-mentioned agreements. Logic and reason compel the conclusion, in the absence of any clear indication to the contrary, that the assumption of the mortgage debt evidenced by the covenant to pay contained in the first extension agreement was not abrogated by the subsequent agreement or agreements extending the time for payment of the mortgage debt. As of November 15, 1955, the due date for payment of the then remaining unpaid principal of the mortgage debt, as specified in the agreement of 1953, the defendant was personally obligated for the payment of the mortgage debt by virtue of his covenant to pay, contained in said agreement. The plaintiff's right to hold defendant to the latter's personal obligation to pay the mortgage debt on the due date of payment as specified in the 1953 extension agreement cannot be deemed to have been waived by reason of any forebearance to press such claim on that date; and, the right to hold the defendant to his personal obligation remained with the plaintiff in the absence of any new agreement clearly showing an intention on plaintiff's part to relinquish or surrender that right. The provisions of the subsequent extension agreements did not purport to extinguish plaintiff's right to hold defendant to his covenant to pay, but simply involved an extension of time within which to make payment upon the mortgage debt. There was nothing in said subsequent agreements that could be deemed to be inconsistent with the defendant's assumption of the mortgage debt as contained in the first extension agreement. Neither has there been any evidence adduced upon the trial of this action to show such conduct or words between the parties as would imply an intention or design on the part of plaintiff to extinguish defendant's covenant to pay.

Under the circumstances, I find that defendant's covenant to pay the mortgage debt which imposed a personal obligation to pay on the part of said defendant remained in force notwithstanding execution of the subsequent extension agreements (see *Brazill* v. *Weed,* 115 Misc. 546, 556; *Motzkin Bros. Cleaners & Dyers* v. *Dime,* 81 N. Y. S. 2d 625, 627; Restatement, Contracts, § 408; 17 C. J. S., Contracts, § 395; Corbin, Contracts, § 1293).

I next draw attention to the issue of whether the payments made by the defendant to plaintiff's attorney, Max S. Seidler, as hereinbefore recited, constituted legal fees and commissions for services rendered in connection with the extensions of time granted to defendant, as plaintiff claims, or were in fact exacted as usurious bonuses, as claimed by defendant (see *Yager* v. *Rubymar Corp.,* 34 Misc 2d 704). It is to be noted at the outset that, in any event, the defendant's counterclaims predicated upon the alleged usury are barred since they were interposed more than one year after the alleged bonuses were paid (*Yager* v. *Rubymar Corp., supra*). As to the defenses based on alleged usury, defendant was required upon the trial to establish by clear and decisive proof that the payments in question were exacted as bonuses, constituting usury, and that they were exacted as such, with the knowledge and assent, or the participation, of the plaintiff (*Farber* v. *De Bruin,* 253 App. Div. 909; *Shapiro* v. *Weissman,* 19 Misc 2d 407; *Margulis* v. *Messinger,* 34 Misc 2d 699). I find that the defendant has failed to establish such defense upon the trial.

I pass next to the issue raised by the defense based upon defendant's contention that, although Seidler bid in the property on the foreclosure sale and took title in his name, the plaintiff was the actual undisclosed purchaser. If the defendant had been able to establish such to be the fact upon the trial, he would have been entitled to have the market value of the premises in question credited upon the indebtedness (New Jersey Stat. Ann., § 2A:50–22; *Yager* v. *Rubymar Corp.,* 34 Misc 2d 704, 711). I find, however, upon all the evidence, that defendant has failed to establish the foregoing claim.

Finally, I find no merit to defendant's contention that the sum sought to be recovered in this action is made up of items which do not constitute proper expenses of a foreclosure sale as provided in section 1087 of the Civil Practice Act. The contention is ill founded since section 1087, dealing as it does with foreclosure actions has, as I have hereinbefore indicated, no application to such actions where they involve mortgages covering property situated outside this state. The amount of the mortgage debt was fixed by the court in New Jersey, as was proper.

Whatever deductions were made from the proceeds of the sale, as charges, presumably were accomplished in accordance with the laws of the State of New Jersey and the judgment of foreclosure rendered in that State with regard to the subject premises.

I find accordingly in favor of the plaintiff for the amount sought to be recovered by her in this action. Defendant's counterclaims are dismissed.