Van Brunt, P. J.
This action was brought for the conversion of a lot of hides. It appeared from the evidence in the case that the plaintiffs, who were co-partners, doing business in Boston, Mass., in hides, wool, etc., hired one George Ford, of Utah, as their agent to buy and ship them hides. Under the agreement entered into between the parties in August, 1877, it was provided that Ford should buy on account of the plaintiffs, they advancing in the first instance and he to draw upon them for the purchase price of hides with bill of lading attached. Ford agreed to engage in no business whatever for any other house or for himself, and to buy no hides, skins of leather except for the plaintiffs, and that his entire services should be employed in their behalf, and it was agreed that he should receive for his services $1,200 per annum. In January, 1878, the agreement was modified by changing the business from Cheyenne to Ogden, and the payment to Ford for his services of a percentage of profits accruing from the business instead of a salary.
Without further material change the business continued until March, 1879, except that the plaintiffs were accustomed to pay Ford’s drafts on account of purchases made by him unaccompanied by bills of lading. Ford bought hides and skins at Ogden and the vicinity and received them at a warehouse hired by him at the place, where they were dried, if green, and baled and from whence they were shipped to Edwards & Brackett. Ford sold, with the plaintiffs’ knowledge, some small items of goods which could not, with profit, be sent east. With this exception no sales of hides whatever were made by Ford as far as the plaintiffs knew. Ford, in violation of his agreement with the plaintiffs, connected himself with the firm of Parsons,; Chase & Co., slaughterers, at Corinne, about twenty miles from Ogden, and established at San Francisco the firm of Ford & Bussell as dealers in dressed beef. Ford, from the proceeds of drafts drawn on the plaintiffs, would advance money to Parsons, Chase & Co. for hides, which the latter would use in the purchase of cattle, and, when killed, would deliver the hides to Ford and ship the dressed beef to Ford & Bussell. This seems to be the clear deduction to be *598 drawn from the testimony of the witness Johnston, although there may be some apparent discrepancies contained therein.
In December, 1878, the defendants had written to the plaintiffs from Ogden asking the plaintiffs to inform them, in confidence, what they knew of the financial ability of the firm of George Ford & Co., hide merchants, “who are doing business here and drawing on you.” The defendants further stated that Ford & Co. desired to avail themselves of their facilities and the defendants could materially aid them in their business, provided they had a sufficient amount of capital to make them safe in doing so, and that any information would be kept strictly confidential, and that they would be happy to reciprocate at any time.
On the 7th of January, 1879, the plaintiffs wrote to the defendants as follows:
“Gentlemen—Your favor of 28th of December is received, contents noted. We do not suppose that Mr. Ford has much, if any, means of his own, nor is there any Co. to Geo. Ford, that we know of. Our arrangments with Mr. Ford is that he is to buy hides to send to us, and he is to draw on us for the cost of them. He has been doing this business for a year or more. As he has no capital of his own he advises us of purchases which he makes and draws on us for the money to pay for them.”
In February, 1879, Ford had a large stock of hides in the warehouse, acquired under the circumstances hereinbefore mentioned, and being in trouble made arrangements with the defendants for pledging to them, the entire stock of hides in the warehouse to secure a note of Parsons, Chase & Co., indorsed by George Ford & Co., for $5,500, and all [other indebtedness from Parsons, Chase & Co., to the defendants, which amounted to $4,000, and gave a bill of sale jof said hides and delivered possession of said warehouse to defendants.
During the time that the defendants were in possession of said warehouse, they put into said warehouse $508.50 worth of hides which they paid for themselves. It also appears that prior to the 12th or 15th of March, 1879, Ford also put into said warehouse certain hides of the value of $2,394.69.. Twenty-five hundred dollars having been paid ¡to the defendants on account of the $5,500 note, Johnston )With the permission of the defendants took out a carload of hides and shipped them to the plaintiffs; and the balance of the note not having been paid at maturity, the defendant sold the entire stock of hides to one Clauson for $6,308.07.
*599 Prior to this sale Johnston had attempted to regain possession of the warehouse by strategem, and a day or two before the sale he told the defendants that the hides belonged to the plaintiffs. The plaintiffs arrived at Ogden on the seventeenth of March, and on the eighteenth saw one of the defendants and made a demand of the hides. This demand being refused, subsequently this action was commenced, and upon the trial a verdict was rendered in favor of the plaintiffs for the full value of the hides, $6,308.07, together with interest, to the amount of $2,900.66, making a total of $9,208.73.
Although this case was submitted to the jury, yet in consequence of some of the propositions which were charged by the learned judge, it becomes necessary to determine this appeal as though there had been a direction of a verdict, because many of the propositions contain the statement that, “If the defendants had knowledge of the fact that Ford was engaged in the business of buying hides for the plaintiffs with money furnished by them and shipping them on their account, the defendants acquired no title to the hides by Ford’s pledge thereof to them.”
This proposition, in view of the facts of the case, is equivalent to a direction to the jury to give a verdict in favor of the plaintiffs, because it is conceded that the defendants received the plaintiffs’ letter distinctly informing them that Ford was engaged in buying hides for the plaintiffs with money belonging to them and shipping them on their account.
As far as the $5,500 note advanced at the time of the pledge is concerned, the defendants would be entitled to hold the hides as bona fide purchasers for value, unless the circumstances of the case were such as to put the defend- . ants upon inquiry, and upon making such inquiry they would have ascertained that Ford was not the owner of the hides in question..
The rule as laid down in Williamson v. Brown (15 N. Y., 354), by the court of appeals, is in these terms: “Where a purchaser has knowledge of any fact sufficient to put him upon inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bona fide purchaser. This presumption, however, is a mere inference of facts, and may be rebutted by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of due diligence on his part.”
Therefore it is clear that if, under the circumstances of the case, the defendants were put upon inquiry and did not *600 make the proper inquiry, they cannot be considered as bona fide purchasers for value.
The correspondence, consisting of the letter of the defendants of December, 1878, and the reply of the plaintiffs of January 7, 1879, clearly communicated to the defendants the fact that Ford was engaged in buying hides to send to the plaintiffs, for the purchase price of which he drew on them; that he had no capital of his own so far as the plaintiffs knew, and that he always advised the plaintiffs of the purchases made by him, and drew on them for the money to pay for them.
They were also informed that although Ford used the firm name of Ford & Co. that, as far as the plaintiffs knew, there was no person representing the “Co.”
This was a clear intimation, upon the part of the plaintiffs, that they did not know that Ford had any money with which to transact business upon his own account. The inquiry was as to his financial ability. The answer was that he had none, and that his business was the buying of hides for them and drawing to get the money to pay for them. This was a clear indication that the plaintiffs did not know of Ford being engaged in any other business and that, as far as the purchase of the hides was concerned, they were purchased for the plaintiffs with their money; that he was acting merely as the agent of the plaintiffs, and that the title of those hides rested with the plaintiffs. In the face of this notice the defendants took the bill of sale from Ford of all the hides that he had on hand without making any inquiry whatever of the plaintiffs, and simply relying upon the statement of Ford that he owned the hides which he was pledging to them.
It is urged upon the part of the defendants that they made all the inquiries that a reasonable man could be called ' upon to make in reference to this subject, when they asked Ford to whom these hides belonged, because it would have been useless to inquire of the plaintiffs in Boston as to the title of a stock of hides in Ogden, Utah. The force of this reasoning, however, we do not apprehend. The defendants knew that Ford was buying hides on account of the "plaintiffs. They knew that Ford had been drawing upon the plaintiffs to pay for these hides, and they further knew that Ford was in the habit of getting money upon these drafts prior to their being paid by the plaintiffs.
It would seem under these circumstances that the most natural parties of whom to inquire would be those persons who might have some claim to the merchandise antagonistic to the party who was attempting to pledge the same. Certainly Ford, when he offered to pledge this property,, asserted as strongly as anybody could assert that he had *601 the title to the property, and making inquiry of him, was an entirely idle ceremony because it is not to be presumed that, under these circumstances, he was going to make any declaration which would prevent him from consummating the fraud which he was attempting to perpetrate upon the plaintiffs. The defendants took no steps to ascertain from the plaintiffs whether or. not they had any claim upon any hides in Mr. Ford’s possession, but contented themselves with taking Ford’s assurance that they belonged to him. This does not seem to have been the course which a man of reasonable prudence would have taken, and it is probable that it is not the course which the defendants would have taken had they not supposed that Ford & Co. would release the skins by the payment of the amounts advanced as they promised to do.
Neither do the provisions of the New York factor’s act in any way affect the question as between the plaintiffs and the defendants in this case. There is no evidence in the case that the New York factor’s act obtained in Utah, and there is no presumption of law that the statutory enactments of the state of New York exist beyond the limits of its own territory. This act, therefore cannot be considered in determining the rights of the parties to this litigation.
The condition of the proofs being such as has been stated, the plaintiffs were entitled to the direction of a verdict in their favor, and, therefore, although the court submitted the question to the Jury as a question of fact, and in so doing charged certain propositions which were equivalent to a direction, and which would have been erroneous had there been any question to submit to the jury, no ground for a new trial arises therefrom.
Upon this appeal the defendants seem to have raised a point which does not seem to have been presented to the court below, and that is that Ford was a partner of the plaintiffs in the business of buying and selling hides, and, therefore, had authority to pledge.
There seem to be two answers to this point. The first is that he had no authority as a partner to pledge for the debt of another concern, and the second is that there is no evidence whatever that he was a partner. The claim that because he was compensated for his services by a certain interest in the profits that he was a partner, cannot for a moment obtain. The whole correspondence shows that he was to have no interest as a partner in the enterprise, that he was not in any way liable for losses, and that his share in the profits was simply as a compensation for services rendered. The first agreement was for a salary of $1,200 a year, but at Ford’s suggestion it was changed to a certain *602 percentage of the profits, and those profits were to be arrived at in a certain way by calculating interest upon the capital employed and the expenses of the enterprise, and his compensation was to consist of a certain share of the profits thus ascertained. His interest in such profits seems clearly to have been simply compensation for services rendered, and he did not therefore become a partner by reason of the arrangement between the plaintiffs and himself.
The court below, however, erred in allowing a recovery for the full amount which was received upon the sale of the hides in the warehouse on the 18th of March, 1879, because the evidence shows that the defendants placed in said warehouse $508.50 worth of hides which they had paid for with their own moneys.
The judgment should therefore be reduced by the sum of $508.50, with interest from the 18th of March, 1879, and upon the plaintiffs stipulating to such reduction the judgment should be affirmed for the balance, without costs to either party of this appeal.
Brady and Bartlett, JJ., concur