*163 OPINION OF THE COURT
Eric I. Prus, J.
Plaintiff Michael Mazza, Jr., individually and as executor of Michael Mazza, deceased, moves for an order dismissing defendant Ludie Perkinson’s affirmative defenses and granting him summary judgment against defendant Perkinson; and for an order appointing a Referee to compute the sums due under the note and mortgage.
Defendant Perkinson cross-moves for an order denying plaintiff’s motion for summary judgment; and granting her summary judgment to the extent of finding that any foreclosure is subject to her life estate in the subject premises.
This is an action to foreclose on a second mortgage dated May 10, 1991, executed by defendant Realty Quest Brokerage Corp. to the plaintiff to secure the payment of $25,000. The premises is a two-family house known as 819 Hopkins Avenue, Brooklyn, New York.
A first mortgage was given to A1 Reich on April 16, 1991. The foreclosure action brought by Reich, in which plaintiff was named as defendant but did not appear, has previously been concluded. Justice Herbert J. Lipp of Supreme Court, Kings County, by decision dated November 19, 1997, determined that the first mortgage was subject to the life estate of defendant Perkinson.
Justice Lipp made the following findings of fact:
1. Eric Pedlar executed a last will and testament on May 31, 1988, in which he devised and bequeathed a life estate interest in premises located at 819 Hopkins Avenue, County of Kings, State of New York, to Ludie Perkinson, including the right for her to collect all rents as they become due for her own use and benefit;
2. Eric Pedlar died on November 25, 1988;
3. Letters of administratrion of the estate of Eric Pedlar were issued to Sadie Pedlar on March 17, 1989;
4. Sadie Pedlar, as administratrix, entered into a contract to sell the subject premises to Realty Quest Brokerage Corp.;
5. An order of the Surrogate’s Court, Kings County, dated January 29, 1991, authorized Sadie Pedlar, as administratrix, to proceed with the sale of premises at 819 Hopkins Avenue, Brooklyn, New York;
6. The defendant, Ludie Perkinson, has continuously resided at 819 Hopkins Avenue from sometime in 1975 to the present *164 date. Since the death of Eric Pedlar she has collected rent from the occupant of the other apartment in the subject premises;
7. On or about March 15, 1991, Ron Swaby, an officer of Realty Quest Brokerage Corp., visited the subject premises and endeavored to speak to Ludie Perkinson. He gave her his business card. He also spoke to the tenant on the second floor, Uriah Higgins, who informed Swaby that he was paying his rent directly to Ludie Perkinson;
8. On or about March 15, 1991, Ron Swaby received a telephone call from Lawrence Gershberg, Esq. Mr. Gershberg advised Mr. Swaby that he represented Ludie Perkinson and that Eric Pedlar had executed a will prior to his death in November of 1988 in which Mr. Pedlar gave Ludie Perkinson a life estate interest in the subject premises;
9. The plaintiff, A1 Reich, was verbally informed by Ron Swaby, at least two days prior to the closing of title, that there were some problems in the transaction. Mr. Reich did not make any further inquires as to the specific nature of the problems;
10. On April 16, 1991, title to the subject premises was conveyed by Sadie Pedlar, as administratrix, to Realty Quest Brokerage Corp.;
11. The plaintiff, A1 Reich, advanced all funds that were required for the purchase of the subject premises, a total exceeding $38,000. Despite the fact of the actual amounts outlaid, the mortgage note and mortgage delivered to the lender plaintiff were in the amount of only $28,000. No payments on the note and mortgage have been made;
12. A1 Reich and Ron Swaby, acting on behalf of Realty Quest Brokerage Corp., agreed that upon the resale of the premises Reich would be paid the monies he advanced at the original closing. Swaby also agreed to pay Reich approximately 43% of the expected “profits” from the resale;
13. The last will and testament of Eric Pedlar was filed in the Probate Department of the Kings County Surrogate’s Court on October 21, 1991. Letters of administration c. t. a. were thereafter issued to Ludie Perkinson.
Justice Lipp found that A1 Reich, the first mortgagee, had both actual and constructive notice of the life estate.
In this case the subject mortgage was entered into prior to the will through which defendant Perkinson claims her interest was made part of the public record. The mortgage was executed on May 10, 1991, and the will, as previously noted, was filed for probate in October 1991.
*165 Plaintiff Michael Mazza, Jr., claims that neither he nor his deceased father had either actual or constructive notice of defendant Perkinson’s interest in the property. In addition, under the facts herein, there was no duty to inquire about the tenancy of Perkinson at the time the mortgage was executed. Accordingly, he argues that he and his father were bona fide purchasers and that their mortgage has priority over the later recorded life estate of defendant Perkinson.
In addition, plaintiff Michael Mazza, Jr., points to the appraisal report which does not indicate that defendant Perkinson had a life estate. He further points to the affidavit of Joseph S. Birrell, a certified real estate appraiser, who claims that he conducted the appraisal of the subject premises; that he visited the' subject premises and inspected the interior and exterior of the subject premises; and that at no time did Perkinson or anyone else inform him that Perkinson had a life estate.
Defendant Perkinson argues that plaintiff had constructive notice of her life estate. In addition, she claims that plaintiff had a duty to inquire about her tenancy.
The affidavit submitted by Birrell is not probative. Birrell testified at an examination before trial that he had no recollection of visiting the premises or who he saw at the premises; that since the appraisal report signed by him is written in somebody else’s handwriting, he might not have been the person who inspected the premises; that the bank requires him to inspect both apartments in a two-family house; that if he cannot obtain access to the second apartment he might ask the tenant of the apartment he gained access to about the second apartment, or assume that the second apartment is similar to the first apartment; that there is no way of telling from the report whether access was gained to the second apartment, since he would not list this information in the report because the bank would give him problems; that he generally does not interview the people who provide him with access; that the report was prepared for an entity known as Gelt Funding, and not plaintiff; that he refused to sign the first affidavit that was prepared for him because it listed details that he had no recollection of; and that he should have not signed the second affidavit because he had no recollection if he ever spoke to anybody at the subject premises.
Defendant Perkinson testified at her examination before trial that several people came to see the house, but she never let them in.
“Actual possession of real estate is sufficient notice to a person proposing to take a mortgage on the property, and to all *166 the world, of the existence of any right which the person in possession is able to establish.” (Phelan v Brady, 119 NY 587, 591-592 [1890]; Miles v De Sapio, 96 AD2d 970 [3d Dept 1983]; Nethaway v Bosch, 199 AD2d 654 [3d Dept 1993].)
In addition, plaintiff and his father had sufficient facts to impose on them a duty to inquire as to defendant Perkinson’s tenancy. Where a tenant is in possession of the property at the time of purchase, or in this case, at the time the mortgage was executed, the purchaser or mortgagee is required to inquire about the title. (Williamson v Brown, 15 NY 354 [1857].) “[W]here a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a bona fide purchaser.” (Williamson v Brown, supra, at 362; Vitale v Pinto, 118 AD2d 774 [2d Dept 1986].)
In the prior action, Justice Lipp found that defendant Perkinson was in “actual, visible, open and notorious possession of the property.”
Plaintiff Michael Mazza, Jr., argues that Judge Lipp’s decision has no bearing on this case, because in that case the first mortgagee had actual notice of defendant Perkinson’s life estate.
Judge Lipp found that the first mortgagee had both actual and constructive notice. In addition, the first mortgagee’s actual knowledge of the life estate has no bearing on the finding with respect to defendant Perkinson’s possession of the premises.
Plaintiff Michael Mazza, Jr., in his affidavit annexed to plaintiffs motion papers, page three, paragraph seven, asserts that “defendant Perkinson’s possession of the Premises did not give us notice of her alleged interest in the Premises. Joseph S. Birrell and Associates, the appraisal company who appraised the Premises upon which we relied prior to us taking back the mortgage, visited the Premises. As set forth in an affidavit in support of this motion it was never told by defendant Perkinson or anyone else, that defendant Perkinson claimed to have a life estate or that she was anything more than a normal tenant.” However, the information listed on page three in Birrell’s appraisal report, on which plaintiff admits reliance, indicates otherwise. The report lists each unit of the premise, rent paid at the time of the appraisal and the *167 estimated, rents. The first unit occupant is listed as “owner” with “0” lease, and “0” rent paid. The second unit occupant is listed as “tenant” with “no lease” total rent “$775.” In order for Birrell to have listed the interest of the first unit as “owner” Birrell had to have knowledge of some possessory interest in the premises by defendant Perkinson as that other than as tenant.
The appraisal report is sufficient to put plaintiff on inquiry as to the existence of some right or claim of title, and at such time the duty to inquire is imposed on plaintiff to decipher the extent, if any, of the adverse claim.
Plaintiff Michael Mazza, Jr., asserts that only possession which is inconsistent with the title of the apparent owner imposes a duty of inquiry, and that in this case, defendant Perkinson’s possession was not on its face inconsistent with that title. Although the appraisal report indicates otherwise, taking plaintiff’s argument to its logical conclusion, a mortgagee would never have to inquire about the tenant’s interest in a property, since the mere possession by a tenant of an apartment in a house would not by itself indicate that the tenant has an interest in the estate. A mortgagee cannot enter into a mortgage with blinders on. A mortgagee has to inquire about the possessory interest of the tenants of the subject premises. In this case, plaintiff has failed to show that he made any inquiry at all. Plaintiff has failed to demonstrate any affirmative steps taken in an effort to determine the validity of title at the time of this transaction. Rather, it appears that plaintiff simply relied on the appraisal report which was conducted in relation to the initial purchase by Realty Quest one month prior to the second mortgage.
Plaintiff cannot avoid the operation of the rule that defendant Perkinson’s occupancy of the premises and the appraisal report listing “owner” as one of the two occupants put him on notice as to her interest in the property.
In addition, the fact that defendant Perkinson may not have told people who came to inspect the apartment about her life estate is of no consequence. Plaintiff has failed to show that defendant Perkinson had a duty to impart this information to these “unknown persons.” Rather, plaintiff had a duty to inquire as to defendant Perkinson’s interest in the property.
Furthermore, a search of the title record would have indicated that the subject property, with a value of over $100,000, had been purchased from Sadie Pedlar, the administratrix of Eric Pedlar’s estate, for less than $40,000. This would *168 have put plaintiff on notice that there might be a cloud on the title.
The cases cited by plaintiff in support of his contentions are distinguishable from this case.
In Fekishazy v Thomson (204 AD2d 959 [3d Dept 1994], appeal dismissed 84 NY2d 844), the record owner provided in the contract of sale that it was subject to a month-to-month tenancy. Such a tenancy is not inconsistent with the title of the apparent owner. In this case, the plaintiff had no information with respect to defendant Perkinson’s tenancy, and failed to make any inquiry.
In Tompkins County Trust Co. v Talandis (261 AD2d 808 [3d Dept 1999], lv dismissed 93 NY2d 1041), the Court found that the mortgagee had priority over the defendant occupant’s claim to the property. In that case, defendant had been present during the negotiations to arrange consolidated refinancing for the property and had not imparted her possessory interest to plaintiff. The Court found that defendant’s silence, coupled with her consent to the subordination of her four prior judgment liens against her ex-husband, belied her future claim to a possessory interest in the property superior to plaintiff. In this case, defendant Perkinson did not take part in the mortgage process.
Accordingly, under the facts presented herein, plaintiff is not a bona fide mortgagee and defendant Perkinson’s life estate has priority over the second mortgage.
Accordingly, plaintiffs motion for an order striking the affirmative defenses of defendant Perkinson is denied. Defendant Perkinson’s cross motion is granted to the extent of finding that her life estate has priority over plaintiffs mortgage. Plaintiff is granted a judgment of foreclosure subordinate to the life estate of defendant Perkinson.